ORIGINAL

1  BROWN, WEGNER & BERLINER LLP
   Matthew A. Berliner (SBN 224384)
2  mberliner@bwb-lawyers.com
   William J. Brown, Jr. (SBN 192950)
3  bill@bwb-lawyers.com
   Janet S. Park (SBN 263511)
4  jpark@bwb-lawyers.com
   2603 Main Street, Suite 1050
5  Irvine, CA 92614
   Tel: 949-705-0080  Fax: 949-794-4099
6
   Attorneys for Defendant/Cross-Complaint
7  3PL Systems, Inc.

8
              **UNITED STATES DISTRICT COURT**
9
            **CENTRAL DISTRICT OF CALIFORNIA**
10

11
   WALTER L. MITCHELL, III, an          Case No.: SACV11-00534 AG(ANx)
12  individual,
                                          Hon. Andrew J. Guilford/ Ctrm D
13            Plaintiff,
                                          **3PL SYSTEMS, INC.'S CROSS-**
14       v.                              **COMPLAINT FOR:**

15  3PL SYSTEMS, INC., a California       **1.  VIOLATION OF THE UNIFORM**
   Corporation,                              **TRADE SECRETS ACT**
16                                        **2.  DECLARATORY JUDGMENT**
              Defendants.
17                                        **3.  VIOLATION OF THE**
   ─────────────────────────────             **COMPUTER FRAUD AND**
18  3PL SYSTEMS, INC., a California          **ABUSE ACT**
   Corporation,                          **4.  VIOLATION OF THE LANHAM**
19                                           **ACT**
              Cross-Complainant,         **5.  BREACH OF CONTRACT**
20       v.                              **6.  BREACH OF IMPLIED**
                                             **COVENANT OF GOOD FAITH**
21  WALTER L. MITCHELL, III, an             **AND FAIR DEALING**
   individual, JONATHAN LANSAGAN,       **7.  BREACH OF FIDUCIARY DUTY**
22  an individual, CHRISTOPHER           **8.  AIDING AND ABETTING**
   VINE GUERRA, an individual,              **BREACH OF FIDUCIARY DUTY**
23  TRINNOS TECHNOLOGY LLC, a           **9.  BREACH OF DUTY OF**
   California Limited Liability              **LOYALTY**
24  Corporation, and ROES 1-10,          **10. NEGLIGENT**
   inclusive,                                **MISREPRESENTATION**
25                                        **11.  CONCEALMENT**
              Cross-Defendants.          **12. VIOLATION OF B&P § 17200**
26                                        **13. VIOLATION OF B&P §17500**
27
                                          **DEMAND FOR JURY TRIAL**
28

                                 1

FILED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

MAY 27 2011

CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

RECEIVED
BUT NOT FILED

MAY 27 2011

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN

BY

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this Cross-Complaint under 18 U.S.C. § 1331 because the claims in this Cross-Complaint arise from the laws of the United States.

2. This Court has subject matter jurisdiction over this Cross-Complaint under 28 U.S.C. § 1367 because the claims in this Cross-Complaint are so related to the claims in the original action so that they form part of the same case or controversy under Article III of the United States Constitution.

3. This Court has personal jurisdiction over WALTER L. MITCHELL ("MITCHELL") because MITCHELL is an individual residing in Irvine, California, and is located in this Court's jurisdiction.

4. This Court has personal jurisdiction over JONATHAN LANSAGAN ("LANSAGAN") because LANSAGAN is an individual residing in Orange County, California, and is located in this Court's jurisdiction.

5. This Court has personal jurisdiction over CHRISTOPHER VINCIGUERRA ("VINCIGUERRA") because VINCIGUERRA is an individual with sufficient contacts with, and has availed himself to Orange County, California for this Court to assert jurisdiction over VINCIGUERRA pursuant to 28 U.S.C. § 1367.

6. This Court has personal jurisdiction over TRINNOS TECHNOLOGY LLC ("TRINNOS") because TRINNOS is a limited liability corporation organized and existing under the laws of the State of California, and its principle place of business is located in Orange County, California.

7. Venue is proper because all of the events and omissions giving rise to the Plaintiff's cross-claims occurred in this district, and this district court has jurisdiction over Plaintiff's cross-claims.

**PARTIES**

8.    Cross-Complainant 3PL SYSTEMS, INC. ("3PL") is a California corporation organized and existing under the laws of the State of California.

9.    Cross-Defendant WALTER L. MITCHELL is an individual residing in Irvine, California.

10.    Cross-Defendant JONATHAN LANSAGAN is an individual residing in Irvine, California.

11.    Cross-Defendant CHRISTOPHER VINCIGUERRA is an individual residing in Cedar Park, Texas.

12.    Cross-Defendant TRINNOS is a limited liability corporation organized and existing under the laws of the State of California.

13.    3PL is ignorant of the true names and capacities of Cross-Defendants sued herein as ROES 1 through 10, inclusive, and therefore sues these Cross-Defendants by such fictitious names. 3PL will seek leave to amend this Cross-Complaint to allege the true names and capacities of such fictitious Cross-Defendants when they are ascertained. 3PL alleges that each of the Cross-Defendants sued herein as ROES 1 through 10, inclusive, is in some manner responsible in whole or in part for the injuries which have been, are being, and will be suffered by 3PL as alleged herein resulting in or contributing to the other cross-defendant's actions which are injurious to 3PL.

**BACKGROUND FACTS**

14.    In 1990, Marc Meskin and Robby Thone formed a corporation called DTM Services Inc. dba Diversified Transportation Services ("DTS"), which is a transportation brokerage firm. DTS wanted to develop software to streamline their coordination of transportation services by various carriers.

15.    In 2000, DTS contracted with MITCHELL to develop a software program and a website known as "Freightsaver.com" collectively, in order to develop a service for customers involving transportation computer systems and

3

1   code ("Software"). The Software was already created at this point, but needed

2   some development. The Software was owned and developed by DTS.

3       16.    In 2000, MITCHELL was an employee with Hyundai Motor

4   Company, and had no knowledge of the specialized freight services industry.

5   MITCHELL was hired by DTS to write code for the Software under the direction of

6   Marc Meskin. Meskin had previously worked with another code writer for DTS in

7   1992 who also worked on the Software.

8       17.    On or about August 8, 2002, MITCHELL entered into an agreement

9   with DTS entitled "Letter of Understanding" wherein MITCHELL agreed to

10  continue to develop and work on the Software for DTS. The Software was going to

11  be used by DTS in running the company.

12      18.    On or about October 21, 2003, MITCHELL entered into a written

13  agreement wherein MITCHELL agreed to continue to develop the Software with

14  the intention that a new entity would be formed to market and sell the software. A

15  true and correct copy of this agreement is attached hereto and incorporated by

16  reference herein as Exhibit "A." What is notable is that Exhibit "A" previously

17  contained a term which allowed MITCHELL to have exclusive rights to develop

18  and manage the development of the Software, but this term was removed by the

19  parties.

20      19.    In 2005, MITCHELL, together with Meskin and Thone, created a

21  corporation entitled 3PL Systems, Inc., which is the named Defendant and Cross-

22  Complainant in this action. MITCHELL, Meskin, and Thone became shareholders

23  of 3PL in 2005. MITCHELL became a full-time employee, officer, and board

24  member of 3PL in 2005, at the time of 3PL's inception.

25      20.    3PL was created in order to market and sell the Software owned by

26  DTS.

27      21.    Included in MITCHELL's job responsibilities was preparing licensing

28  agreements with 3PL's customers when customers desired to purchase a copy of the

4

1    Software from 3PL. A true and correct copy of a typical form licensing agreement

2    is attached hereto and incorporated by referenced herein as Exhibit "B."

3         22.    MITCHELL's licensing agreements that he drafted for 3PL's

4    customers include language that clearly states that 3PL is the exclusive owner of all

5    rights to the Software.

6         23.    At some point from 2005 to 2011, unbeknownst to 3PL and DTS,

7    MITCHELL devised and implemented a plan to steal the rights to the Software, and

8    planned to start a competing business.

9         24.    In furtherance of his plan, MITCHELL began illegally collecting

10   confidential information, trade secrets, computer code, and customer lists from 3PL

11   without notification to 3PL or the consent of 3PL, and without authorization.

12        25.    Also in furtherance of his plan, in 2005, MITCHELL decided to

13   register the Software with the U.S. Copyright Office in order to later fraudulently

14   claim rights to the Software. Even though MITCHELL knew the Software was

15   owned by 3PL, MITCHELL submitted his application stating that he was the sole

16   owner of the Software. MITCHELL did so without notification to 3PL, and without

17   consent from 3PL.

18        26.    During this time from 2005 to 2011, MITCHELL took 3PL funds for

19   his own use and purposes, including using 3PL's company credit card to purchase

20   personal items for himself and 3PL employees, without the consent of 3PL. Also

21   during this time, MITCHELL diverted 3PL's company funds into his personal bank

22   accounts in order to use them for his own purposes, including saving up to set up

23   his own competing business. MITCHELL also improperly used 3PL company

24   funds to pay for the personal expenses of other 3PL employees, in violation of

25   3PL's policies.

26        27.    In 2007 MITCHELL filed an application with the US Copyright Office

27   in order to update the registration of the Software, which was now further

28   developed. MITCHELL again submitted his application stating that he was the sole

5

1   owner of the Software, even though he knew that the further-developed Software

2   was still owned by 3PL, and MITCHELL had no ownership interest in the

3   Software. MITCHELL did so without notification to 3PL, or consent from 3PL.

4       28.   MITCHELL's wrongful activities were not discovered until December

5   2010.

6       29.   On or around March 17, 2011, MITCHELL was terminated from his

7   employment with 3PL.

8       30.   After his termination from 3PL Systems, MITCHELL, without

9   authorization, accessed and damaged 3PL's computers and servers.  MITCHELL

10  blocked 3PL's employees from having access to their computer files, and caused

11  serious damage and interruption of business for 3PL. MITCHELL also tampered

12  with DTS' computer networks and systems, and caused damage to both DTS and

13  3PL.

14      31.   On or around March 2011MITCHELL also illegally accessed DTS'

15  email system and sent emails from 3PL's employees' and officers' accounts to third

16  parties. MITCHELL also sent threatening emails to DTS' and 3PL's officers and

17  employees. This damaged 3PL's computer networks and systems, and caused

18  significant disruption and interruption to 3PL's business.

19      32.   On or around January 2011, MITCHELL's father also made several

20  threatening phone calls to 3PL's officers and employees under MITCHELL's

21  direction and authorization .

22      33.   Because of MITCHELL's actions, 3PL had to hire additional security

23  guards, put in additional security measures, and hire consultants to fix the damage

24  done by MITCHELL.

25      34.   From around December 2010 to the present, MITCHELL and the other

26  Cross-Defendants have made false and disparaging statements about 3PL systems

27  to 3PL customers.

28

35.    Based on information and belief, sometime in Spring 2011 both before and after the termination of his employment, MITCHELL recruited several 3PL employees including LANSAGAN and VICIGUERRA, in order to conspire together to compete with and injure 3PL.

36.    In April 2011, MITCHELL formed a company called Trinnos Technology LLC, which is the named cross-defendant in this action, in order to market and sell the Software as his own. MITCHELL hired then-current 3PL employees to work for MITCHELL and TRINNOS in furtherance of MITCHELL's conspiracy to injure 3PL.

37.    Also in furtherance of his plan, on April 7, 2011, MITCHELL filed a lawsuit against 3PL alleging copyright infringement claims based on his fraudulent copyright applications, in an effort to utilize the judicial system to steal the Software from 3PL.

38.    Currently, all Cross-Defendants are continuing to conduct business, wrongfully competing against 3PL by using 3PL's trade secrets, customer lists, confidential information, computer code, and wrongfully promoting, advertising, and reselling the Software owned by 3PL.

39.    3PL now claims that it is the rightful owner of all rights to the Software, and requests a judicial determination of the rights of all parties with regards to the Software, as well as damages against all cross-defendants for their wrongful and injurious acts against 3PL.

## CLAIMS FOR RELIEF

### First Cause of Action

### Violation of the California Uniform Trade Secrets Act –

### Civil Code §3426 *et seq.*

### (Against all Cross-Defendants)

40.    3PL realleges and incorporates as though set forth fully herein the allegations found in paragraphs 1 through 39 above.

7

41.   3PL is the owner and/or the licensee of the Software, as well as confidential information, trade secrets, customer lists, and computer code.

42.   3PL has used reasonable efforts under the circumstances to maintain the secrecy of its trade secrets, confidential information, customer lists, and computer codes, including having its employees sign confidentiality agreements.

43.   Cross-Defendants were employees of 3PL, wherein Cross-Defendants signed confidentiality agreements where Cross-Defendants agreed to keep 3PL's trade secrets, confidential information, customer lists, and computer code secret.

44.   "Confidential information" includes data, formulas, patterns, compilations, programs, devices, methods, techniques and processes owned, authored, developed and used by 3PL during the course of its business.

45.   "Trade secrets" includes 3PL's data, formulas, patterns, compilations, programs, devices, methods, techniques, and processes pertaining to transportation services management, including data pertaining to the Software, that is not generally known to the public that has economic value from preventing disclosure or use by third parties of such information.

46.   3PL has used reasonable efforts under the circumstances to maintain the secrecy of its trade secrets, including utilizing secured computer and network systems, security computer codes, and confidentiality agreements with all employees.

47.   "Customer lists" includes 3PL's compilations, lists, memoranda, emails, letters, correspondence, invoices, receipts, records, and other documents that include information regarding the identity of any of 3PL's customers.

48.   3PL's customer lists have economic value because the disclosure of 3PL's customer lists would allow a competitor to direct its sales efforts to those customers who have shown a willingness to use a unique type of service and products.

8

49.   "Computer code" includes 3PL's program instructions, source code and source code files, machine code, machine language, rules, system of symbols, program files, compilation instructions, linking information, algorithms, and any other programming language sets and electronically stored information that relates to 3PL's software.

50.   Cross-Defendants misappropriated these trade secrets, confidential information, customer lists, and computer codes by improper acquisition, unconsented use and improper disclosure, without 3PL's consent. Cross-Defendants misappropriated trade secrets, confidential information, customer lists, and computer codes with the knowledge that such information constitutes trade secrets and confidential information, without 3PL's consent.

51.   Cross-Defendants improperly took information from 3PL's computer and deleted important emails and electronically stored files without consent, and with the knowledge that such actions were wrongful.

52.   Cross-Defendants knew or should have known that such trade secrets, confidential information, customer lists, and computer codes were acquired by improper means by the other Cross-Defendants.

53.   Cross-Defendants have improperly, systematically, and without authorization retained, disclosed and exploited 3PL's trade secrets, confidential information, customer lists, and computer codes for the purposes of soliciting customers to cease doing business with 3PL and start doing business with Cross-Defendants. Cross-Defendants have engaged in this conduct and continue to do so despite demands from 3PL that they cease and desist such unlawful behavior and return all of 3PL's trade secrets, confidential information, customer lists, and computer codes.

54.   Cross-Defendants' continued retention, disclosure and use of 3PL's 3PL's trade secrets, confidential information, customer lists, and computer codes as alleged  herein above, constitutes actual and threatened misappropriation of  trade

9

1   secrets pursuant to the California Uniform Trade Secrets Act, Cal. Civ. Code §§

2   3426, *et seq.*

3       55.    Cross-Defendant's actions were a substantial factor in causing damage

4   to 3PL in the form of lost revenue, loss of business, loss of customers, and other

5   damage to be proven at trial.

6       56.    Cross-Defendant's misappropriation was a substantial factor in causing

7   Cross-defendant to be unjustly enriched.

8       57.    3PL requests that a constructive trust be imposed over any and all

9   profits gained because of Cross-Defendant's misappropriation of 3PL's trade

10  secrets.

11      58.    3PL also requests that Cross-Defendants pay 3PL a reasonable royalty

12  for the use and resale of the Software from the time period of the first sale of the

13  software by Cross-Defendants to the time that this injunction is implemented.

14      59.    As a proximate result of Cross-Defendants' conduct, 3PL has suffered

15  irreparable injury. Unless Cross-Defendants are restrained and/or enjoined, 3PL

16  faces an immediate threat of continuing irreparable harm. 3PL has suffered and will

17  continue suffer irreparable injury for which 3PL lacks an adequate remedy at law.

18  Thus, 3PL requests that a preliminary and permanent injunction be imposed over

19  Cross-Defendants enjoining them from the use, disclosure, and acquisition of 3PL's

20  trade secrets, confidential information, computer code, software systems, and

21  customer lists.

22      60.    Cross-Defendants have willfully and maliciously misappropriated

23  3PL's trade secrets, customer lists, confidential information, computer codes and

24  the Software, with the knowledge that Cross-Defendants have wrongfully acquired

25  and utilized such information. Thus, 3PL requests that this court award 3PL

26  exemplary damages in an amount to be proven at trial, pursuant to Civil Code §

27  3426.3.

28  ///

### Second Cause of Action

### Declaratory Judgment

### (Against all Cross-Defendants)

61.     3PL realleges and incorporates as though set forth fully herein the allegations found in paragraphs 1 through 60 above.

62.     MITCHELL filed two or more applications for the Software in the US Copyright Office in order to secure an exclusive right and/or a limited monopoly that is not granted by the Copyright office, which is against public policy.

63.     MITCHELL filed his applications in order to enforce the provisions of the copyrights to secure more extensive rights than granted by the Copyright Act embodied under 17 U.S.C. §§101 *et seq.*

64.     MITCHELL filed a lawsuit claiming copyright infringement by 3PL with regards to the Software. MITCHELL filed his copyright applications and his lawsuit with the knowledge that 3PL has ownership and/or licensing rights to the Software, and such actions were wholly without merit. There is currently a substantial controversy that exists as to the rights to the Software.

65.     3PL now requests that the court issue an order precluding MITCHELL from enforcing of his copyright applications from the time period of the date of filing all applications until a determination has been made regarding MITCHELL's rights to the Software.

66.     3PL also seeks a declaration that MITCHELL's copyright applications are invalid, and any rights MITCHELL may claim to the Software are deemed invalid.

///

///

///

1

### Third Cause of Action

### Violation of the Computer Fraud and Abuse Act

### (Against WALTER L. MITCHELL, JONATHAN LANSAGAN, and
### CHRISTOPHER VINCIGUERRA)

67. 3PL realleges and incorporates as though set forth fully herein the allegations found in paragraphs 1 through 66 above.

68. 3PL's computers are protected computers because 3PL's computers are used in interstate commerce and communication.

69. Cross-Defendants MITCHELL, LANSAGAN, and VINCIGUERRA intentionally accessed 3PL's computers without authorization and/or exceeded their authorized access to obtain information involving interstate communications, including emails, customer information, financial records, telephone numbers, addresses, and other confidential information regarding the marketing and sales to customers in different states.

70. Cross-Defendants MITCHELL, LANSAGAN, and VINCIGUERRA knowingly accessed 3PL's computers with the intent to defraud and obtained confidential proprietary information for their own gain, and to the detriment of 3PL.

71. Cross-Defendants MITCHELL, LANSAGAN, and VINCIGUERRA's has and will continue to distribute 3PL's confidential proprietary information to third parties and earn a profit off of 3PL's confidential proprietary information.

72. Cross-Defendants MITCHELL, LANSAGAN, and VINCIGUERRA's unauthorized access to 3PL's computers caused damage to 3PL in an amount greater than $5,000, to be determined at trial.

73. 3PL now seeks general and compensatory damages, injunctive relief and other equitable relief that the court deems proper.

### Fourth Cause of Action

### Violation of the Lanham Act – 15 U.S.C. §1125(a)

### (Against All Cross-Defendants)

12

74.    3PL realleges and incorporates as though set forth fully herein the allegations found in paragraphs 1 through 73 above.

75.    Cross-Defendants used, and continue to use in commerce false and misleading descriptions of fact and false and misleading representations of fact about the Software.

76.    Cross-Defendants made, and continue to make representations that were and are likely to cause confusion, mistake, and/or to deceive as to the affiliation, connection, or association of such Cross-Defendants with 3PL.

77.    Cross-Defendants used, and continue to use in commerce words, terms, names, symbols, and devices, and combinations thereof, which are likely to cause confusion, mistake, and/or to deceive as to the affiliation, connection, or association of such Cross-Defendants with 3PL.

78.    Cross-Defendants, in commercial advertising or promotion, misrepresented the nature, characteristics, qualities and geographic origin of their goods, services, and commercial activities, in that Cross-Defendants advertised and promoted the Software as their own, and made derogatory and false representations in regards to 3PL and to the characteristics, qualities and geographic origin of 3PL's goods, services, and commercial activities.

79.    Cross-Defendants continue to make disparaging and false representations as to the Software, and to the characteristics, qualities and geographic origin of 3PL's goods, services, and commercial activities.

80.    3PL has been damaged and continues to be damaged because of Cross-Defendants' representations.

81.    Unless enjoined by this Court, Cross-Defendants will continue to unlawfully advertise and promote the Software as their own, continue to make misrepresentations regarding 3PL to 3PL's customers, and will cause irreparable damage and injury to 3PL.

82.    3PL has no adequate remedy at law.

13

83.     3PL now prays for general damages, consequential damages, injunctive relief, declaratory judgment, exemplary damages, and any other relief that the court deems proper.

## Fifth Cause of Action

## Breach of Contract

## (Against WALTER L. MITCHELL, JONATHAN LANSAGAN, and CHRISTOPHER VINCIGUERRA)

84.     3PL realleges and incorporates as though set forth fully herein the allegations found in paragraphs 1 through 83 above.

85.     MITCHELL, LANSAGAN, and VINCIGUERRA all have entered into written employment agreements with 3PL.

86.     MITCHELL, LANSAGAN, and VINCIGUERRA all have entered into confidentiality agreements with 3PL.

87.     3PL has performed any and all conditions, covenants, and promises under the employment agreements and confidentiality agreements with MITCHELL, LANSAGAN, and VINCIGUERRA.

88.     As set forth above, between 2005 to the present, MITCHELL has breached his employment agreement and confidentiality agreement by, among other things, misappropriating trade secrets, confidential information, and customer lists from 3PL, diverting 3PL's company funds for his own use, and illegally reselling the Software which is the property of 3PL.

89.     MITCHELL, LANSAGAN and VICIGUERRA breached their employment contracts and confidentiality contracts by, among other things, misappropriating trade secrets, confidential information, and customer lists from 3PL, contacting and soliciting 3PL's customers within the prohibited time period, and making false and disparaging statements about 3PL and its proprietary information.

14

90.     As a direct and proximate result of MITCHELL's, LANSAGAN's, and VICIGUERRA's breaches, 3PL has suffered, and continues to suffer damages in an amount to be determined according to proof at trial, but not less than $1,000,000.

### Sixth Cause of Action

### Breach of Implied Covenant of Good Faith and Fair Dealing

### (Against WALTER L. MITCHELL, JONATHAN LANSAGAN, and CHRISTOPHER VINCIGUERRA)

91.     3PL realleges and incorporates as though set forth fully herein the allegations found in paragraphs 1 through 90 above.

92.     A covenant of good faith and fair dealing is implied by law in all contracts. The covenant requires that neither party to a contract do anything to deprive the other of the benefits of the contract.

93.     At the time that Cross-defendants MITCHELL, LANSAGAN, and VINCIGUERRA entered into employment agreements with 3PL, those cross-defendants implicitly agreed to act in good faith and deal fairly with 3PL. MITCHELL, LANSAGAN, and VINCIGUERRA agreed with 3PL to act, abide and perform the conditions and terms set forth in their employment agreements with 3PL in good faith and in a fair manner.

94.     MITCHELL, LANSAGAN, and VINCIGUERRA breached their implied covenant to act in good faith, and they acted in bad faith when they took 3PL's proprietary information in order to make a profit for themselves with a competing firm Trinnos Technology LLC.

95.     MITCHELL breached his implied covenant to act in good faith towards 3PL with MITCHELL diverted 3PL's company funds for his own personal gain including using 3PL's company credit cards to purchase personal items for himself, and diverting funds into his own personal accounts, without consent, authorization, or notification to 3PL.

96.     MITCHELL, LANSAGAN, and VINCIGUERRA breached the duty of good faith and fair dealing by promising 3PL without any intention of carrying out their promises in order to unjustly enrich themselves to the financial detriment of 3PL.

97.     Based on information and belief, MITCHELL, LANSAGAN, and VINCIGUERRA further breached the duty of good faith and fair dealing by other acts or omissions of which 3PL are presently unaware, and which will be shown according to proof at time of trial.

98.     As a direct and proximate result of MITCHELL, LANSAGAN, and VINCIGUERRA's breaches of this implied covenant, 3PL has been damaged in the sum of not less than $1,000,000, plus interest at the legal rate per annum since March 2010, as well as additional funds according to proof at time of trial, plus attorney's fees.

### **Seventh Cause of Action**

### **Breach of Fiduciary Duty**

### **(Against WALTER L. MITCHELL)**

99.     3PL realleges and incorporates as though set forth fully herein the allegations found in paragraphs 1 through 98 above.

100.    MITCHELL is currently a shareholder and partner of 3PL. MITCHELL was an officer of 3PL from 3PL's inception in 2005 until 2011. MITCHELL was a member of the Board of Directors of 3PL from 2005 until sometime in 2011.

101.    MITCHELL acted on 3PL's behalf for purposes of developing and managing the Software, as well as creating and drafting license agreements with 3PL's customers.

102.    During his employment with 3PL, MITCHELL misappropriated 3PL's trade secrets, confidential information, and customer lists, planned and executed his

16

1   plan to steal 3PL's software and proprietary information in order to compete against

2   3PL, and solicit 3PL's customers and employees away from 3PL. MITCHELL also

3   wrongfully accessed 3PL's electronically stored information and private networks

4   to remove, delete, damage, and took and used confidential and proprietary

5   information from 3PL without authorization, for his own benefit, and with the

6   intent to injure 3PL.

7       103.    While MITCHELL was an officer, board member, and shareholder of

8   3PL, MITCHELL, among other things, created a business that is adverse to the

9   interests of 3PL, diverted corporate funds of 3PL, wrongfully accessed and

10  damaged 3PL's computer networks and systems, conspired with other 3PL

11  employees to injure 3PL, and is now suing 3PL.

12      104.    MITCHELL failed to act as a reasonably careful shareholder, officer,

13  board member, and partner of 3PL would have acted under the same or similar

14  circumstances.

15      105.    3PL was and continues to be harmed in an amount to be proven at trial

16  because of MITCHELL's actions;

17      106.    MITCHELL's conduct was a substantial factor in causing 3PL's harm.

18      107.    MITCHELL's conduct was done with malice, oppression, and/or

19  fraud, in that MITCHELL had a willful and knowing disregard of the rights of 3PL,

20  and deliberately acted with the intent to cause harm to 3PL, in that exemplary

21  damages may be properly awarded against MITCHELL.

### Eighth Cause of Action

### Aiding and Abetting Breach of Fiduciary Duty

### (Against WALTER L. MITCHELL, JONATHAN LANSAGAN, and

### CHRISTOPHER VINCIGUERRA)

26      108.    3PL realleges and incorporates as though set forth fully herein the

27  allegations found in paragraphs 1 through 107 above.

28      109.    MITCHELL is currently a shareholder and partner of 3PL.

17

1    110.   MITCHELL acted on 3PL's behalf for purposes of developing and

2    managing the Software, as well as creating and drafting license agreements with

3    3PL's customers.

4    111.   During his employment with 3PL, MITCHELL misappropriated 3PL's

5    trade secrets, confidential information, and customer lists, planned and executed his

6    plan to steal 3PL's software and proprietary information in order to compete against

7    3PL, and solicit 3PL's customers and employees away from 3PL.

8    112.   While MITCHELL is a partner and shareholder of 3PL, MITCHELL

9    created a business that is adverse to the interests of 3PL, diverted corporate funds of

10   3PL, wrongfully accessed and damaged 3PL's computer networks and systems, and

11   is suing 3PL.

12   113.   MITCHELL failed to act as a reasonably careful shareholder and

13   partner of 3PL would have acted under the same or similar circumstances.

14   114.   LANSAGAN and VINCIGUERRA had actual knowledge of

15   MITCHELL's misappropriation of 3PL's trade secrets, as well as MITCHELL's

16   plan and conspiracy to injure and compete against 3PL.

17   115.   LANSAGAN and VINCIGUERRA knowingly participated in aiding

18   and abetting MITCHELL in the misappropriation of 3PL's trade secrets, and

19   knowingly participated in MITCHELL's plan and conspiracy to injure and compete

20   against 3PL. LANSAGAN and VINCIGUERRA's actions included

21   misappropriating 3PL's trade secrets themselves, deleting electronically stored

22   information on 3PL's computer networks and systems, and disrupting 3PL's

23   business activities.

24   116.   MITCHELL knowingly induced LANSAGAN and VINCIGUERRA

25   in participating in their activities, including but not limited to misappropriation of

26   3PL's trade secrets, deleting electronically stored information on 3PL's computer

27   networks and systems, and disrupting 3PL's business activities.

28

117.   3PL was and continues to be harmed in an amount to be proven at trial because of Cross-Defendants' actions; ·

118.   Cross-Defendants' conduct was a substantial factor in causing 3PL's harm.

### Ninth Cause of Action

### Breach of the Duty of Loyalty

### (Against WALTER L. MITCHELL, JONATHAN LANSAGAN, and CHRISTOPHER VINCIGUERRA)

119.   3PL realleges and incorporates as though set forth fully herein the allegations found in paragraphs 1 through 118 above.

120.   MITCHELL is currently a shareholder and partner of 3PL.

121.   MITCHELL acted on 3PL's behalf for purposes of developing and managing the Software, as well as creating and drafting license agreements with 3PL's customers.

122.   During his employment with 3PL, MITCHELL knowingly misappropriated 3PL's trade secrets, confidential information, and customer lists, planned and executed his plan to steal 3PL's software and proprietary information in order to compete against 3PL, and solicit 3PL's customers and employees away from 3PL.

123.   While MITCHELL was a partner and shareholder of 3PL, MITCHELL created a business that is adverse to the interests of 3PL, diverted corporate funds of 3PL, wrongfully accessed and damaged 3PL's computer networks and systems, and is suing 3PL.

124.   MITCHELL knowingly acted against the interests of 3PL during his employment with 3PL, and acted against the interests of 3PL while he was a partner and shareholder of 3PL.

125.    MITCHELL continues to act on against the interest of 3PL while performing as an agent, officer, and employee of 3PL's competitor Trinnos, whose interest are adverse to 3PL.

126.    3PL did not give informed consent to any of MITCHELL's wrongful conduct, as alleged herein.

127.    3PL was and continues to be harmed in an amount to be proven at trial because of MITCHELL's actions.

128.    MITCHELL's conduct was a substantial factor in causing 3PL's harm.

129.    Cross-Defendants' conduct was done with malice, oppression, and/or fraud, in that Cross-Defendants acted with willful and knowing disregard of the rights of 3PL, and deliberately acted with the intent to cause harm to 3PL, in that exemplary damages may be properly awarded against Cross-Defendants.

## Tenth Cause of Action

### Negligent Misrepresentation

### (Against All Cross-Defendants)

130.    3PL realleges and incorporates as though set forth fully herein the allegations found in paragraphs 1 through 129 above.

131.    Cross-defendants represented to third parties such as 3PL's current and former customers and to 3PL, that certain facts were true, including but not limited to the fact that cross-defendants were the owners of the Software and other proprietary information.

132.    MITCHELL made representations to 3PL that he was developing and managing the Software for the benefit of 3PL, and that 3PL and DTS would be the exclusive owners of the Software.

133.    Although cross-defendants may have honestly believed that the representations were true, cross-defendants had no reasonable grounds for believing the representations were true when they made it.

20

134.    Cross-defendants intended that third parties and 3PL rely on these representations.

135.    That third parties and 3PL were ignorant of the truth and did reasonably rely on cross-defendants' representations.

136.    3PL was harmed, and 3PL's reliance on cross-defendants' representations was a substantial factor in causing 3PL's harm.

## Eleventh Cause of Action

## Fraudulent Concealment

## (Against WALTER L. MITCHELL)

137.    3PL realleges and incorporates as though set forth fully herein the allegations found in paragraphs 1 through 136 above.

138.    MITCELL is a business partner and shareholder of 3PL.

139.    MITCHELL intentionally failed to disclose certain material facts to 3PL, including but not limited to the fact that MITCHELL misappropriated 3PL's confidential information, trade secrets, computer code, and customer lists from 3PL without notification to 3PL or the consent of 3PL, in anticipation of competing against 3PL, filing several applications for copyright protection for the Software, diverting 3PL's corporate funds for his personal use, illegally accessing 3PL's computer network and systems, and soliciting and contacting 3PL's customers for his own gain.

140.    MITCHELL actively concealed certain material facts including but not limited to the fact that MITCHELL misappropriated 3PL's confidential information, trade secrets, computer code, and customer lists from 3PL without notification to 3PL or the consent of 3PL, in anticipation of competing against 3PL, filing several applications for copyright protection for the Software, diverting 3PL's corporate funds for his personal use, illegally accessing 3PL's computer network and systems, and soliciting and contacting 3PL's customers for his own gain. MITCHELL actively prevented 3PL from discovering those facts.

21

141.   MITCHELL intended to deceive 3PL by concealing material facts.

142.   3PL did not know of the concealed facts, and did reasonably rely on MITCHELL's deception.

143.   3PL was harmed and MITCHELL's concealment was a substantial factor in causing 3PL's harm.

144.   MITCHELL's conduct was done with malice, oppression, and/or fraud, in that MITCHELL acted with willful and knowing disregard of the rights of 3PL, and deliberately acted with the intent to cause harm to 3PL, in that exemplary damages may be properly awarded against MITCHELL.

## Twelfth Cause of Action

### Violation of Business & Professions Code §17200 *et seq.*

### (Against All Cross-Defendants)

145.   3PL realleges and incorporates as though set forth fully herein the allegations found in paragraphs 1 through 144 above.

146.   Cross-Defendants' wrongful conduct as alleged herein constitutes unfair and fraudulent business practices that can and have in fact deceived 3PL in violation of California Business & Professions Code §17200 *et seq.* Cross-Defendants' wrongful conduct includes but not limited to:

   a. False and misleading representations about the Software and 3PL;

   b. Misappropriation of trade secrets, confidential information, customer lists, and computer code;

   c. Fraud and concealment;

   d. Misuse of 3PL company funds;

   e. Illegal access and destruction of 3PL's electronically stored information;

   f. Conspiracy to damage 3PL, and other wrongful actions.

147.   Cross-Defendants' wrongful conduct is part of an ongoing pattern and/or systematic course of conduct that continues to the present day.

22

148.    Cross-Defendants' wrongful conduct adversely impacts the public interest.

149.    Cross-Defendants' wrongful conduct is a factual and legal cause of financial harm to 3PL. 3PL would not have continued employment of Cross-Defendants if 3PL knew of Cross-Defendant's conspiracy, and would never have hired Cross-Defendants if 3PL knew about Cross-Defendants' intention to carry out the wrongful conduct alleged herein. 3PL would never have given shares to MITCHELL, appointed him officer, allowed him to be a board member, and made him a partner of 3PL if 3PL knew about MITCHELL's intention to carry out the wrongful conduct alleged herein.

150.    3PL requests the court enter such orders as may be necessary to restore to 3PL all sums which Cross-Defendants wrongfully acquired by means of unfair and fraudulent conduct as provided in Business & Professions Code §17203, Civil Code §3345, and for other appropriate relief.

151.    Cross-Defendants' conduct was deliberate and undertaken with oppression, fraud and/or malice within the meaning of Civil Code §3294, justifying an award of exemplary damages.

### Thirteenth Cause of Action

### Violation of Business & Professions Code §17500 *et seq.*

### (Against All Cross-Defendants)

152.    3PL realleges and incorporates as though set forth fully herein the allegations found in paragraphs 1 through 151 above.

153.    Cross-Defendants made untrue and misleading statements to the public regarding the services of 3PL and the Software, including statements in publications and over the Internet, with the knowledge that such statements were untrue, in violation of California Business & Professions Code §17500.

CASE NO. SACV11-00534 MLG
3PL'S CROSS COMPLAINT

154.   As a direct result of Cross-Defendants' conduct, Cross-Defendants have been and will be unjustly enriched at the expense of 3PL and the general public.

155.   3PL seeks an order awarding 3PL restitution of all monies wrongfully acquired by Cross-Defendants by means of false statements, plus interest and attorney's fees.

156.   Cross-Defendants' conduct was deliberation and was undertaken with oppression, fraud and/or malice within the meaning of Civil Code §3294, justifying an award of exemplary damages.

## **PRAYER FOR RELIEF**

Wherefore, 3PL prays for judgment as follows:

AS TO THE FIRST CAUSE OF ACTION:

1. For general and compensatory damages;

2. For a preliminary and permanent injunction against all Cross-Defendants, enjoining all Cross-Defendants from the following actions:

   a. Possessing, copying, or making unauthorized use of Plaintiff's customer lists, trade secrets, computer codes, and confidential information that are the proprietary property of Plaintiff.

   b. Advertising, marketing, and selling the Software, as described herein.

   c. Contacting and/or soliciting customers whose identifying information is contained in Plaintiff's customer lists, trade secrets, computer codes, and confidential information.

   d. Disposing of or destroying any documents that are relevant to the Complaint in this action, including but not limited to customer lists, trade secrets, computer codes, and confidential information, which includes metadata, and any electronically stored information.

e. Disposing of or destroying any documents or related materials that evidence, relate, or pertain to Defendant's misappropriation of Plaintiff's customer lists, trade secrets, computer codes, and confidential information, as well as any electronically stored information, and information obtained from third parties regarding Plaintiff's customer lists, trade secrets, computer codes, and confidential information.

f. Accessing or attempting to access 3PL's computer networks and systems, including any and all email systems and telephone systems.

3. For a constructive trust over the profits wrongfully received by Cross-Defendants;

4. For an order for Cross-Defendants to pay 3PL reasonable royalties;

5. For exemplary damages; and

6. For reasonable attorney's fees.

AS TO THE SECOND CAUSE OF ACTION:

1. For an order precluding MITCHELL from enforcing his copyright applications with regards to the Software;

2. A declaration that MITCHELL's copyright applications are invalid; and

3. A declaration that MITCHELL has no right or claim to the Software.

AS TO THE THIRD CAUSE OF ACTION:

1. For general and compensatory damages; and

2. For a preliminary and permanent injunction against all Cross-Defendants as outlined herein.

AS TO THE FOURTH CAUSE OF ACTION:

1. For general and compensatory damages; and

2. For a preliminary and permanent injunction against all Cross-Defendants outlined herein.

3. A declaration that MITCHELL's copyright applications are invalid;

25

1    4. A declaration that MITCHELL has no right or claim to the Software;  and

2    5. For exemplary damages.

3  AS TO THE FIFTH CAUSE OF ACTION:

4    1. For general and compensatory damages not less than $1,000,000; and

5    2. For attorney's fees.

6  AS TO THE SIXTH CAUSE OF ACTION:

7    1. For general and compensatory damages.

8  AS TO THE SEVENTH CAUSE OF ACTION:

9    1. For general and compensatory damages; and

10    2. For exemplary damages.

11  AS TO THE EIGHTH CAUSE OF ACTION:

12    1. For general and compensatory damages.

13  AS TO THE NINTH CAUSE OF ACTION:

14    1. For general and compensatory damages; and

15    2. For exemplary damages.

16  AS TO THE TENTH CAUSE OF ACTION:

17    1. For general and compensatory damages.

18  AS TO THE ELEVENTH CAUSE OF ACTION:

19    1. For general and compensatory damages;

20    2. For exemplary damages; and

21    3. For attorney's fees.

22  AS TO THE TWELFTH CAUSE OF ACTION:

23    1. For general and compensatory damages;

24    2. For civil penalties allowed by statute;

25    3. For exemplary damages; and

26    4. For attorney's fees.

27  AS TO THE THIRTEENTH CAUSE OF ACTION:

28    1. For general and compensatory damages;

2. For restitution of all monies wrongfully acquired, plus interest;

3. For civil penalties allowed by statute;

4. For exemplary damages; and

5. For attorney's fees.

AS TO ALL CAUSES OF ACTION:

1. For all costs of suit herein incurred;

2. For attorney's fees as permitted by contract and/or statute; and

3. For such other and further relief as the court may deem proper.


DATED: May 23, 2011          BROWN, WEGNER & BERLINER LLP


                             By: _____
                                 Matthew A. Berliner
                                 William J. Brown
                                 Janet S. Park
                                 Attorneys for Defendant
                                 3PL Systems, Inc.


                        JURY DEMAND

    3PL demands a trial by jury.


DATED: May 23, 2011          BROWN, WEGNER & BERLINER LLP


                             By: _____
                                 Matthew A. Berliner
                                 William J. Brown
                                 Janet S. Park
                                 Attorneys for Defendant
                                 3PL Systems, Inc.


27

CASE NO. SACV11-00534 MLG
3PL'S CROSS COMPLAINT

# Exhibit A

## <u>LETTER OF UNDERSTANDING</u>

**Software Development Proposal**

This proposal is for the continued development and future intentions of the transportation brokerage office management software (referred to as TMS).

At the time that the TMS is marketed and sold a new enterprise will be formed with the following ownership:

|  |  |
|---|---|
| Marc Meskin and Robby Thone | 70% |
|     (24% for time and effort, 44% for current and future capital investment, 2% for existing freightsaver.com ownership) | |
| Walter Mitchell | 25% |
|     (24% for time and effort, 1% for existing freightsaver.com ownership) | |
| Bill Suwara (from freightsaver.com) | 2% |
| Buster Schwab (from freightsaver.com) | 2% |
| Ryan Reine (from freightsaver.com) | 1% |
| Roland Sunga (from freightsaver.com) | 0% |

Additionally, Walter Mitchell will be granted a contract for the continued development of the software. The contract will be for 6 months at $3,500.00 per month. The contract will start on November 1st 2003 and terminate on April 30th 2004. After the end of 6 months this contract can be renegotiated with the following considerations:

- If a new enterprise is formed then an agreed upon salary will be provided to Walter Mitchell for the continued development, project management, and implementation of the software. The terms of the salary will be determined at the time that formation of the new enterprise and will include a provision based on the success of the software.
- If continued development is requested and an enterprise is not formed both parties (Walter Mitchell and Marc Meskin) will agree to terms to extend the contract. This will include consideration for other installations of the software to help subsidize the cost of the contract.
- Walter Mitchell will have exclusive rights to develop and manage the development of the TMS software.

If the proposal outlined above is acceptable please indicate acceptance below.

Walter Mitchell _____   10/21/03
                                       Date

Marc Meskin _____   10/21/03
                                       Date

10/19/2003

EXHIBIT "B"



2681 Dow Ave. Suite B1
Tustin, CA 92780
www.3plsystems.com
714-855-3370

## LICENSE AGREEMENT

**NOTICE TO USER:  THIS IS A CONTRACT. BY INSTALLING AND/OR USING THIS SOFTWARE YOU ACCEPT ALL THE TERMS AND CONDITIONS OF THIS AGREEMENT.**

This 3PL Systems, Inc. ("3PLSYS") End User License Agreement ("EULA") accompanies all 3PL Systems products, services, web sites, web applications and related explanatory materials ("SOFTWARE"). The term "SOFTWARE" shall also include any upgrades, modified versions or updates of the Software licensed to you by 3PLSYS. Please read this EULA carefully. If you are reading this prior to electronic distribution, you will be asked to accept this agreement and continue to install or, if you wish to decline this agreement, in which case you will not be able to use the Software. The SOFTWARE is protected by copyright laws and international copyright treaties, as well as other intellectual property laws and treaties. The SOFTWARE is licensed, not sold.

## 1. DEFINITIONS

I. USER – A single person, entity or system accessing the SOFTWARE. USER licensing is based on concurrent users.

## 2. GRANT OF LICENSE: Upon issuance of a valid SERIAL NUMBER by 3PLSYS to you and a current service agreement, this EULA grants you the following rights:

a. SOFTWARE PRODUCT: 3PLSYS grants to you as an individual, a non-transferable, non-exclusive license to use the SOFTWARE PRODUCT for use as an individual or entity. All USERS that use this product must be licensed.
b. If you are an entity, 3PLSYS grants you the same rights as above.
c. YOU MAY NOT DISTRIBUTE ANY PORTION OF THE SOFTWARE.
d. ELECTRONIC DOCUMENTS: Solely with respect to electronic documents included with the SOFTWARE, you may make an unlimited number of copies (either in hardcopy or electronic form), provided that such copies shall be used only for internal purposes and are not republished or distributed to any third party.
e. You must take all necessary precautions to guard, maintain and guarantee the confidentiality of the SOFTWARE and trade secrets it contains (including all data, text and formulae).  Disclosure to any party is strictly forbidden.
f. The CUSTOMER INTERNET MODULE allows you the right to provide access to your customers using your valid LICENSE. The limit of these customers is specified in the service contract.
g. The number of USERS is limited to those purchased and maintaining in the service contract.
h. 3PLSYS reserves all rights not expressly granted.

## 3. PROVISIONS OF THE SERVICE

a. 3PLSYS has subsidiaries and affiliated legal entities around the world ("Subsidiaries and Affiliates"). Sometimes, these companies will be providing the SOFTWARE to you on behalf of 3PLSYS itself. You acknowledge and agree



2681 Dow Ave. Suite B1
Tustin, CA 92780
www.3plsystems.com
714-855-3370

that Subsidiaries and Affiliates will be entitled to provide the SOFTWARE to you.

b. 3PLSYS is constantly innovating in order to provide the best possible experience for its users. You acknowledge and agree that the form and nature of the SOFTWARE which 3PLSYS provides may change from time to time without prior notice to you.

c. As part of this continuing innovation, you acknowledge and agree that 3PLSYS may stop (permanently or temporarily) providing any features within the SOFTWARE to you or to users generally at 3PLSYS's sole discretion, without prior notice to you. You may stop using the SOFTWARE at any time.

d. You acknowledge and agree that if 3PLSYS disables access to your account, you may be prevented from accessing the SOFTWARE, your account details or any files or other content which is contained in your account.

e. You agree not to access (or attempt to access) any of the SOFTWARE by any means other than through the interface that is provided by 3PLSYS, unless you have been specifically allowed to do so in a separate agreement with 3PLSYS. You specifically agree not to access (or attempt to access) any of the SOFTWARE through any automated means (including use of scripts or web crawlers) and shall ensure that you comply with the instructions set out in any robots.txt file present on the SOFTWARE.

f. You agree that you will not engage in any activity that interferes with or disrupts the SOFTWARE (or the servers and networks which are connected to the SOFTWARE).

g. You agree that you are solely responsible for (and that 3PLSYS has no responsibility to you or to any third party for) any breach of your obligations under the Terms and for the consequences (including any loss or damage which 3PLSYS may suffer) of any such breach.

h. You agree and understand that you are responsible for maintaining the confidentiality of passwords associated with any account you use to access the SOFTWARE.

i. You understand that all information (such as data files, written text, computer software, music, audio files or other sounds, photographs, videos or other images) which you may have access to as part of, or through your use of, the SOFTWARE are the sole responsibility of the person from which such content originated.

j. You acknowledge and agree that 3PLSYS (or 3PLSYS's licensors) own all legal right, title and interest in and to the SOFTWARE, including any intellectual property rights which subsist in the SOFTWARE (whether those rights happen to be registered or not, and wherever in the world those rights may exist). You further acknowledge that the SOFTWARE may contain information which is designated confidential by 3PLSYS and that you shall not disclose such information without 3PLSYS's prior written consent.

**4. COPYRIGHT.** The SOFTWARE is owned by 3PLSYS and its suppliers, and its structure, organization and code are the valuable trade secrets of 3PLSYS and its suppliers. The SOFTWARE is protected by United States Copyright Law and International Treaty provisions. You may use trademarks only


2681 Dow Ave. Suite B1
Tustin, CA 92780
www.3plsystems.com
714-855-3370

insofar as required to comply with Section 1 of this EULA and to identify printed output produced by the Software, in accordance with accepted trademark practice, including identification of trademark owner's name. Such use of any trademark does not give you any rights of ownership in that trademark. Except as stated above, this EULA does not grant you any intellectual property rights in the Software.

**5. RESTRICTIONS.** You may not resell, transfer, rent or lease the SOFTWARE. You agree not to modify, adapt, translate, reverse engineer, decompile, disassemble or otherwise attempt to discover the source code of the Software. You may not alter or modify in any way the installer for the Software, or create a new installer for the Software. Redistribution rights, if any, are outlined below. No portion of SOFTWARE PRODUCTS may be redistributed.

**6. UPGRADES.** The SOFTWARE may automatically be updated from time to time. These updates are designed to improve, enhance and further develop the SOFTWARE and may take the form of bug fixes, enhanced functions, new software modules and completely new versions. You agree to receive such updates (and permit 3PLSYS to deliver these to you) as part of your use of the Services.

If the SOFTWARE is labeled as an upgrade, you must be properly licensed to use a product identified by 3PLSYS as being eligible for the upgrade in order to use the SOFTWARE. SOFTWARE labeled as an upgrade replaces and/or supplements the product that formed the basis for your eligibility for the upgrade. You may use the resulting upgraded product only in accordance with the terms of this EULA. If the SOFTWARE is an upgrade of a component of a package of software programs that you licensed as a single product, the SOFTWARE may be used and transferred only as part of that single product package and may not be separated for use on more than one computer.

**7. EXPORT RESTRICTIONS.** You agree that neither you nor your customers intend to or will, directly or indirectly, export or transmit (a) the SOFTWARE or related documentation and technical data or (b) your software products as defined under of this EULA (or any part thereof), or any process or service that is the direct product of the SOFTWARE to any country to which such export or transmission is restricted by any applicable U.S. regulation or statute, without the prior written consent, if required, of the Bureau of Export Administration of the U.S. Department of Commerce, or such other governmental entity as may have jurisdiction over such export or transmission.

**8. NO WARRANTY.** The SOFTWARE is being delivered to you AS IS and 3PLSYS makes no warranty as to its use or performance. 3PLSYS AND ITS SUPPLIERS DO NOT AND CANNOT WARRANT THE PERFORMANCE OR RESULTS YOU MAY OBTAIN BY USING THE SOFTWARE OR DOCUMENTATION.



2681 Dow Ave. Suite B1
Tustin, CA 92780
www.3plsystems.com
714-855-3370

3PLSYS AND ITS SUPPLIERS MAKE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO NONINFRINGEMENT OF THIRD PARTY RIGHTS, MERCHANTABILITY, OR FITNESS FOR ANY PARTICULAR PURPOSE. IN NO EVENT WILL 3PLSYS OR ITS SUPPLIERS BE LIABLE TO YOU FOR ANY CONSEQUENTIAL, INCIDENTAL OR SPECIAL DAMAGES, INCLUDING ANY LOST PROFITS OR LOST SAVINGS, EVEN IF A 3PLSYS REPRESENTATIVE HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, OR FOR ANY CLAIM BY ANY THIRD PARTY. Some states or jurisdictions do not allow the exclusion or limitation of incidental, consequential or special damages, or the exclusion of implied warranties or limitations on how long an implied warranty may last, so the above limitations may not apply to you.

**9. GOVERNING LAW AND GENERAL PROVISIONS.** This EULA will be governed by the laws of the State of California, U.S.A., excluding the application of its conflicts of law rules. This EULA will not be governed by the United Nations Convention on Contracts for the International Sale of Goods, the application of which is expressly excluded. If any part of this EULA is found void and unenforceable, it will not affect the validity of the balance of the EULA, which shall remain valid and enforceable according to its terms. You agree that the Software will not be shipped, transferred or exported into any country or used in any manner prohibited by the United States Export Administration Act or any other export laws, restrictions or regulations. This EULA shall automatically terminate upon failure by you to comply with its terms. This Agreement may only be modified in writing signed by an authorized officer of 3PLSYS.

**10. NOTICE TO GOVERNMENT END USERS.** If this product is acquired under the terms of a: GSA contract- Use, reproduction or disclosure is subject to the restrictions set forth in the applicable ADP Schedule contract; U.S. DoD contract- Use, duplication or disclosure by the Government is subject to restrictions as set forth in subparagraph (c) (1) (ii) of 252.227-7013; Civilian agency contract- Use, reproduction, or disclosure is subject to 52.227-19 (a) through (d) and restrictions set forth in this EULA.

**11. TECHNOLOGY ESCROW.** The software (source code and database) will be held by a third party technology escrow. The escrow service will require additional fees paid by the licensee. These fees will include housing the deposited material and updates. Verification services are not included. Release conditions for the software are included in the Beneficiary Contract signed with the Technology Escrow Company.

Unpublished-rights reserved under the copyright laws of the United States. 3PL Systems, Inc., a California Corporation, 19829 Hamilton Ave, Torrance, California 90502.
Effective 9/18/2008