FILED

1   BROWN, WEGNER & BERLINER LLP
    Matthew A. Berliner (SBN 224384)
2   mberliner@bwb-lawyers.com
    William J. Brown, Jr. (SBN 192950)
3   bill@bwb-lawyers.com
    Janet S. Park (SBN 263511)
4   jpark@bwb-lawyers.com
    2603 Main Street, Suite 1050
5   Irvine, CA 92614
    Tel: 949-705-0080  Fax: 949-794-4099
6
7   Attorneys for Defendant/Cross-Complainant
    3PL Systems, Inc.

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

2011 JUN 24  PM 3: 53

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA

BY_____

| | |
|---|---|
| 10  WALTER L. MITCHELL, III, an individual, <br><br> 11 <br><br> 12           Plaintiff, <br><br> 13       v. <br><br> 14  3PL SYSTEMS, INC., a California Corporation, <br><br> 15 <br><br> 16           Defendants. <br><br> 17 <br><br> 18  3PL SYSTEMS, INC., a California Corporation, <br><br> 19 <br><br> 20           Cross-Complainant, <br> 21       v. <br><br> 22  WALTER L. MITCHELL, III, an individual, JONATHAN LANSAGAN, <br> 23  an individual, CHRISTOPHER VINCIGUERRA, an individual, <br> 24  TRINNOS TECHNOLOGY LLC, a California Limited Liability <br> 25  Corporation, and ROES 1-10, <br> 26  inclusive, <br><br> 27           Cross-Defendants. <br><br> 28 | Case No.: SACV11-00534 AG(ANx) <br> Hon. Andrew J. Guilford/ Ctrm D <br><br> **3PL SYSTEMS, INC.'S FIRST AMENDED CROSS-COMPLAINT FOR:** <br><br> **1.  VIOLATION OF THE UNIFORM TRADE SECRETS ACT** <br> **2.  DECLARATORY JUDGMENT** <br> **3.  VIOLATION OF THE STORED WIRE AND ELECTRONIC COMMUNICATIONS AND TRANSACTIONAL RECORDS ACCESS ACT** <br> **4.  VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT** <br> **5.  VIOLATION OF THE LANHAM ACT** <br> **6.  BREACH OF CONTRACT** <br> **7.  BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING** <br> **8.  BREACH OF FIDUCIARY DUTY** <br> **9.  AIDING AND ABETTING BREACH OF FIDUCIARY DUTY** <br> **10. BREACH OF DUTY OF LOYALTY** <br> **11. NEGLIGENT MISREPRESENTATION** <br> **12. CONCEALMENT** <br> **13. VIOLATION OF B&P § 17200** <br> **14. VIOLATION OF B&P §17500** <br><br> **DEMAND FOR JURY TRIAL** |

1

1

## JURISDICTION AND VENUE

2          1.      This Court has subject matter jurisdiction over this Cross-Complaint

3    under 18 U.S.C. § 1331 because the claims in this Cross-Complaint arise from the

4    laws of the United States.

5          2.      This Court has subject matter jurisdiction over this Cross-Complaint

6    under 28 U.S.C. § 1367 because the claims in this Cross-Complaint are so related to

7    the claims in the original action so that they form part of the same case or

8    controversy under Article III of the United States Constitution.

9          3.      This Court has personal jurisdiction over WALTER L. MITCHELL

10   ("MITCHELL") because MITCHELL is an individual residing in Irvine, California,

11   and is located in this Court's jurisdiction.

12         4.      This Court has personal jurisdiction over JONATHAN LANSAGAN

13   ("LANSAGAN") because LANSAGAN is an individual residing in Orange

14   County, California, and is located in this Court's jurisdiction.

15         5.      This   Court   has   personal   jurisdiction   over   CHRISTOPHER

16   VINCIGUERRA ("VINCIGUERRA") because VINCIGUERRA is an individual

17   with sufficient contacts with, and has availed himself to Orange County, California

18   for this Court to assert jurisdiction over VINCIGUERRA pursuant to 28 U.S.C. §

19   1367.

20         6.      This Court has personal jurisdiction over TRINNOS TECHNOLOGY

21   LLC ("TRINNOS") because TRINNOS is a limited liability corporation organized

22   and existing under the laws of the State of California, and its principle place of

23   business is located in Orange County, California.

24         7.      Venue is proper because all of the events and omissions giving rise to

25   the Plaintiff's cross-claims occurred in this district, and this district court has

26   jurisdiction over Plaintiff's cross-claims.

27

28

**PARTIES**

8.     Cross-Complainant 3PL SYSTEMS, INC. ("3PL") is a California corporation organized and existing under the laws of the State of California.

9.     Cross-Defendant WALTER L. MITCHELL is an individual residing in Irvine, California.

10.    Cross-Defendant JONATHAN LANSAGAN is an individual residing in Irvine, California.

11.    Cross-Defendant CHRISTOPHER VINCIGUERRA is an individual residing in Cedar Park, Texas.

12.    Cross-Defendant TRINNOS is a limited liability corporation organized and existing under the laws of the State of California.

13.    3PL is ignorant of the true names and capacities of Cross-Defendants sued herein as ROES 1 through 10, inclusive, and therefore sues these Cross-Defendants by such fictitious names. 3PL will seek leave to amend this Cross-Complaint to allege the true names and capacities of such fictitious Cross-Defendants when they are ascertained. 3PL alleges that each of the Cross-Defendants sued herein as ROES 1 through 10, inclusive, is in some manner responsible in whole or in part for the injuries which have been, are being, and will be suffered by 3PL as alleged herein resulting in or contributing to the other cross-defendant's actions which are injurious to 3PL.

**BACKGROUND FACTS**

14.    In 1990, Marc Meskin and Robby Thone formed a corporation called DTM Services Inc. dba Diversified Transportation Services ("DTS"), which is a transportation brokerage firm. DTS wanted to develop software to streamline their coordination of transportation services by various carriers.

15.    In 2000, DTS contracted with MITCHELL to develop a software program and a website known as "Freightsaver.com" collectively, in order to develop a service for customers involving transportation computer systems and

3

1  code ("Software"). The Software was already created at this point, but needed

2  some development. The Software was owned and developed by DTS.

3     16.   In 2000, MITCHELL was an employee with Hyundai Motor

4  Company, and had no knowledge of the specialized freight services industry.

5  MITCHELL was hired by DTS to write code for the Software under the direction of

6  Marc Meskin. Meskin had previously worked with another code writer for DTS in

7  1992 who also worked on the Software.

8     17.   On or about August 8, 2002, MITCHELL entered into an agreement

9  with DTS entitled "Letter of Understanding" wherein MITCHELL agreed to

10  continue to develop and work on the Software for DTS. The Software was going to

11  be used by DTS in running the company.

12     18.   On or about October 21, 2003, MITCHELL entered into a written

13  agreement wherein MITCHELL agreed to continue to develop the Software with

14  the intention that a new entity would be formed to market and sell the software. A

15  true and correct copy of this agreement is attached hereto and incorporated by

16  reference herein as Exhibit "A." What is notable is that Exhibit "A" previously

17  contained a term which allowed MITCHELL to have exclusive rights to develop

18  and manage the development of the Software, but this term was removed by the

19  parties.

20     19.   In 2005, MITCHELL, together with Meskin and Thone, created a

21  corporation entitled 3PL Systems, Inc., which is the named Defendant and Cross-

22  Complainant in this action. MITCHELL, Meskin, and Thone became shareholders

23  of 3PL in 2005. MITCHELL became a full-time employee, officer, and board

24  member of 3PL in 2005, at the time of 3PL's inception.

25     20.   3PL was created in order to market and sell the Software owned by

26  DTS.

27     21.   Included in MITCHELL's job responsibilities was preparing licensing

28  agreements with 3PL's customers when customers desired to purchase a copy of the

4

1  Software from 3PL. A true and correct copy of a typical form licensing agreement

2  is attached hereto and incorporated by referenced herein as Exhibit "B."

3      22.    MITCHELL's licensing agreements that he drafted for 3PL's

4  customers include language that clearly states that 3PL is the exclusive owner of all

5  rights to the Software.

6      23.    At some point from 2005 to 2011, unbeknownst to 3PL and DTS,

7  MITCHELL devised and implemented a plan to steal the rights to the Software, and

8  planned to start a competing business.

9      24.    In furtherance of his plan, MITCHELL began illegally collecting

10  confidential information, trade secrets, computer code, and customer lists from 3PL

11  without notification to 3PL or the consent of 3PL, and without authorization.

12      25.    Also in furtherance of his plan, in 2005, MITCHELL decided to

13  register the Software with the U.S. Copyright Office in order to later fraudulently

14  claim rights to the Software. Even though MITCHELL knew the Software was

15  owned by 3PL, MITCHELL submitted his application stating that he was the sole

16  owner of the Software. MITCHELL did so without notification to 3PL, and without

17  consent from 3PL.

18      26.    During this time from 2005 to 2011, MITCHELL took 3PL funds for

19  his own use and purposes, including using 3PL's company credit card to purchase

20  personal items for himself and 3PL employees, without the consent of 3PL. Also

21  during this time, MITCHELL diverted 3PL's company funds into his personal bank

22  accounts in order to use them for his own purposes, including saving up to set up

23  his own competing business. MITCHELL also improperly used 3PL company

24  funds to pay for the personal expenses of other 3PL employees, in violation of

25  3PL's policies.

26      27.    In 2007 MITCHELL filed an application with the US Copyright Office

27  in order to update the registration of the Software, which was now further

28  developed. MITCHELL again submitted his application stating that he was the sole

owner of the Software, even though he knew that the further-developed Software was still owned by 3PL, and MITCHELL had no ownership interest in the Software. MITCHELL did so without notification to 3PL, or consent from 3PL.

28. MITCHELL's wrongful activities were not discovered until December 2010.

29. On or around March 17, 2011, MITCHELL was terminated from his employment with 3PL.

30. After his termination from 3PL Systems, MITCHELL, without authorization, accessed and damaged 3PL's computers and servers. MITCHELL blocked 3PL's employees from having access to their computer files, and caused serious damage and interruption of business for 3PL. MITCHELL also tampered with DTS' computer networks and systems, and caused damage to both DTS and 3PL.

31. On or around March 2011, MITCHELL also illegally accessed DTS' email system and sent emails from 3PL's employees' and officers' accounts to third parties. MITCHELL also sent threatening emails to DTS' and 3PL's officers and employees. This damaged 3PL's computer networks and systems, and caused significant disruption and interruption to 3PL's business.

32. On or around January 2011, MITCHELL's father also made several threatening phone calls to 3PL's officers and employees under MITCHELL's direction and authorization .

33. Because of MITCHELL's actions, 3PL had to hire additional security guards, put in additional security measures, and hire consultants to fix the damage done by MITCHELL.

34. From around December 2010 to the present, MITCHELL and the other Cross-Defendants have made false and disparaging statements about 3PL systems to 3PL customers.

35.    Based on information and belief, sometime in Spring 2011 both before and after the termination of his employment, MITCHELL recruited several 3PL employees including LANSAGAN and VICIGUERRA, in order to conspire together to compete with and injure 3PL. While still employed with 3PL, these recruited employees failed to perform their material job duties and intentionally deleted, altered and destroyed 3PL's electronic files.

36.    In April 2011, MITCHELL formed a company called Trinnos Technology LLC, which is the named cross-defendant in this action, in order to market and sell the Software as his own. MITCHELL hired then-current 3PL employees to work for MITCHELL and TRINNOS in furtherance of MITCHELL's conspiracy to injure 3PL.

37.    Also in furtherance of his plan, on April 7, 2011, MITCHELL filed a lawsuit against 3PL alleging copyright infringement claims based on his fraudulent copyright applications, in an effort to utilize the judicial system to steal the Software from 3PL.

38.    Currently, all Cross-Defendants are continuing to conduct business, wrongfully competing against 3PL by using 3PL's trade secrets, customer lists, confidential information, computer code, and wrongfully promoting, advertising, and reselling the Software owned by 3PL.

39.    3PL now claims that it is the rightful owner of all rights to the Software, and requests a judicial determination of the rights of all parties with regards to the Software, as well as damages against all cross-defendants for their wrongful and injurious acts against 3PL.

## CLAIMS FOR RELIEF

### First Cause of Action

### Violation of the California Uniform Trade Secrets Act –

### Civil Code §3426 *et seq.*

### (Against all Cross-Defendants)

7

40. 3PL realleges and incorporates as though set forth fully herein the allegations found in paragraphs 1 through 39 above.

41. 3PL is the owner and/or the licensee of the Software, as well as confidential information, trade secrets, customer lists, and computer code.

42. 3PL has used reasonable efforts under the circumstances to maintain the secrecy of its trade secrets, confidential information, customer lists, and computer codes, including having its employees sign confidentiality agreements.

43. Cross-Defendants were employees of 3PL, wherein Cross-Defendants signed confidentiality agreements where Cross-Defendants agreed to keep 3PL's trade secrets, confidential information, customer lists, and computer code secret.

44. "Confidential information" includes data, formulas, patterns, compilations, programs, devices, methods, techniques and processes owned, authored, developed and used by 3PL during the course of its business.

45. "Trade secrets" includes 3PL's data, formulas, patterns, compilations, programs, devices, methods, techniques, and processes pertaining to transportation services management, including data pertaining to the Software, that is not generally known to the public that has economic value from preventing disclosure or use by third parties of such information.

46. 3PL has used reasonable efforts under the circumstances to maintain the secrecy of its trade secrets, including utilizing secured computer and network systems, security computer codes, and confidentiality agreements with all employees.

47. "Customer lists" includes 3PL's compilations, lists, memoranda, emails, letters, correspondence, invoices, receipts, records, and other documents that include information regarding the identity of any of 3PL's customers.

48. 3PL's customer lists have economic value because the disclosure of 3PL's customer lists would allow a competitor to direct its sales efforts to those

1 customers who have shown a willingness to use a unique type of service and
2 products.

3     49. "Computer code" includes 3PL's program instructions, source code
4 and source code files, machine code, machine language, rules, system of symbols,
5 program files, compilation instructions, linking information, algorithms, and any
6 other programming language sets and electronically stored information that relates
7 to 3PL's software.

8     50. Cross-Defendants misappropriated these trade secrets, confidential
9 information, customer lists, and computer codes by improper acquisition,
10 unconsented use and improper disclosure, without 3PL's consent. Cross-Defendants
11 misappropriated trade secrets, confidential information, customer lists, and
12 computer codes with the knowledge that such information constitutes trade secrets
13 and confidential information, without 3PL's consent.

14     51. Cross-Defendants improperly took information from 3PL's computer
15 and deleted important emails and electronically stored files without consent, and
16 with the knowledge that such actions were wrongful.

17     52. Cross-Defendants knew or should have known that such trade secrets,
18 confidential information, customer lists, and computer codes were acquired by
19 improper means by the other Cross-Defendants.

20     53. Cross-Defendants have improperly, systematically, and without
21 authorization retained, disclosed and exploited 3PL's trade secrets, confidential
22 information, customer lists, and computer codes for the purposes of soliciting
23 customers to cease doing business with 3PL and start doing business with Cross-
24 Defendants. Cross-Defendants have engaged in this conduct and continue to do so
25 despite demands from 3PL that they cease and desist such unlawful behavior and
26 return all of 3PL's trade secrets, confidential information, customer lists, and
27 computer codes.

28

9

54. Cross-Defendants' continued retention, disclosure and use of 3PL's 3PL's trade secrets, confidential information, customer lists, and computer codes as alleged herein above, constitutes actual and threatened misappropriation of trade secrets pursuant to the California Uniform Trade Secrets Act, Cal. Civ. Code §§ 3426, *et seq.*

55. Cross-Defendant's actions were a substantial factor in causing damage to 3PL in the form of lost revenue, loss of business, loss of customers, and other damage to be proven at trial.

56. Cross-Defendant's misappropriation was a substantial factor in causing Cross-defendant to be unjustly enriched.

57. 3PL requests that a constructive trust be imposed over any and all profits gained because of Cross-Defendant's misappropriation of 3PL's trade secrets.

58. 3PL also requests that Cross-Defendants pay 3PL a reasonable royalty for the use and resale of the Software from the time period of the first sale of the software by Cross-Defendants to the time that this injunction is implemented.

59. As a proximate result of Cross-Defendants' conduct, 3PL has suffered irreparable injury. Unless Cross-Defendants are restrained and/or enjoined, 3PL faces an immediate threat of continuing irreparable harm. 3PL has suffered and will continue suffer irreparable injury for which 3PL lacks an adequate remedy at law. Thus, 3PL requests that a preliminary and permanent injunction be imposed over Cross-Defendants enjoining them from the use, disclosure, and acquisition of 3PL's trade secrets, confidential information, computer code, software systems, and customer lists.

60. Cross-Defendants have willfully and maliciously misappropriated 3PL's trade secrets, customer lists, confidential information, computer codes and the Software, with the knowledge that Cross-Defendants have wrongfully acquired and utilized such information. Thus, 3PL requests that this court award 3PL

10

1 | exemplary damages in an amount to be proven at trial, pursuant to Civil Code §
2 | 3426.3.

### Second Cause of Action

### Declaratory Judgment

### (Against WALTER L. MITCHELL)

6 | 61.    3PL realleges and incorporates as though set forth fully herein the
7 | allegations found in paragraphs 1 through 60 above.

8 | 62.    MITCHELL filed two or more applications for the Software in the US
9 | Copyright Office in order to secure an exclusive right and/or a limited monopoly
10 | that is not granted by the Copyright office, which is against public policy.

11 | 63.    MITCHELL filed his applications in order to enforce the provisions of
12 | the copyrights to secure more extensive rights than granted by the Copyright Act
13 | embodied under 17 U.S.C. §§101 *et seq.*

14 | 64.    MITCHELL filed a lawsuit claiming copyright infringement by 3PL
15 | with regards to the Software. MITCHELL filed his copyright applications and his
16 | lawsuit with the knowledge that 3PL has ownership and/or licensing rights to the
17 | Software, and such actions were wholly without merit. There is currently a
18 | substantial controversy that exists as to the rights to the Software.

19 | 65.    3PL now requests that the court issue an order precluding MITCHELL
20 | from enforcing of his copyright applications from the time period of the date of
21 | filing all applications until a determination has been made regarding MITCHELL's
22 | rights to the Software.

23 | 66.    3PL also seeks a declaration that MITCHELL's copyright applications
24 | are invalid, and any rights MITCHELL may claim to the Software are deemed
25 | invalid.

26 | 67.    3PL also seeks an order from this court ordering MITCHELL to cancel
27 | his copyrights as registered in the U.S. Copyright Office.

28 | ///

### Third Cause of Action

## Violation of the Stored Wire and Electronic Communications and

## Transactional Records Access Act

## (Against WALTER L. MITCHELL, III)

68.   3PL realleges and incorporates as though set forth fully herein the allegations found in paragraphs 1 through 67 above.

69.   3PL's computers are protected computers because 3PL's computers are used in interstate commerce and communication. 3PL provides electronic communication services to its employees and customers.

70.   MITCHELL was not authorized to access email and computer accounts that were assigned to other 3PL employees.

71.   In March 2011, MITCHELL intentionally accessed 3PL's email system without authorization and altered, deleted, and sent out email messages in other 3PL employees' accounts in order to cause damage to 3PL.

72.   In March 2011, MITCHELL intentionally blocked access to 3PL's email system, and 3PL employees were not able to access their accounts, and 3PL's business was disrupted because of MITCHELL's unauthorized access.

73.   In March 2011, MITCHELL intentionally altered 3PL's email and computer accounts so that 3PL employees were prevented from accessing their accounts, and 3PL's business was disrupted because of MITCHELL's unauthorized alteration.

74.   In March 2011, MITCHELL intentionally accessed parts of 3PL's computer and email systems that he was not authorized to access, including 3PL's electronic storage systems in conjunction with 3PL's email systems in order to damage and disrupt 3PL's business.

75.   3PL was directly and proximately damaged because of MITCHELL's unauthorized access, alteration, and disruption of 3PL's email and computer networks.

12

76.    3PL now seeks general and compensatory damages, and other equitable relief that the court deems proper.

## Fourth Cause of Action

### Violation of the Computer Fraud and Abuse Act

### (Against WALTER L. MITCHELL, JONATHAN LANSAGAN, and CHRISTOPHER VINCIGUERRA)

77.    3PL realleges and incorporates as though set forth fully herein the allegations found in paragraphs 1 through 76 above.

78.    3PL's computers are protected computers because 3PL's computers are used in interstate commerce and communication.

79.    Cross-Defendants MITCHELL, LANSAGAN, and VINCIGUERRA intentionally accessed 3PL's computers without authorization and/or exceeded their authorized access to obtain information involving interstate communications, including emails, customer information, financial records, telephone numbers, addresses, and other confidential information regarding the marketing and sales to customers in different states.

80.    Cross-Defendants MITCHELL, LANSAGAN, and VINCIGUERRA exceeded their authorized access because they had agreed in their employment and confidentiality agreements with 3PL to not use or disclose 3PL's trade secrets without written permission from 3PL. MITCHELL, LANSAGAN and VINCIGUERRA promised to not use or disclose 3PL's proprietary information for the personal benefit of themselves or for the benefit of any person, firm, company or corporation other than 3PL.

81.    In March 2011, MITCHELL intentionally accessed 3PL's email system without authorization and altered, deleted, and sent out email messages in order to cause damage to 3PL.

13

82.  In March 2011, LANSAGAN intentionally accessed 3PL's email system without authorization and altered, deleted, and sent out email messages in order to cause damage to 3PL.

83.  In March 2011, VINCIGUERRA intentionally accessed 3PL's email system without authorization and altered, deleted, and sent out email messages in order to cause damage to 3PL.

84.  In March 2011, LANSAGAN and VINCIGUERRA attempted to "scrub" their computers thereby damaging and deleting 3PL's electronically stored information and computer systems.

85.  Cross-Defendants MITCHELL, LANSAGAN, and VINCIGUERRA knowingly accessed 3PL's computers with the intent to defraud and obtained confidential proprietary information for their own gain, and to the detriment of 3PL.

86.  Cross-Defendants MITCHELL, LANSAGAN, and VINCIGUERRA's has and will continue to distribute 3PL's confidential proprietary information to third parties and earn a profit off of 3PL's confidential proprietary information.

87.  Cross-Defendants MITCHELL, LANSAGAN, and VINCIGUERRA's unauthorized access to 3PL's computers caused damage to 3PL in an amount greater than $5,000, to be determined at trial.

88.  3PL now seeks general and compensatory damages, injunctive relief and other equitable relief that the court deems proper.

### Fifth Cause of Action

### Violation of the Lanham Act – 15 U.S.C. §1125(a)

### (Against All Cross-Defendants)

89.  3PL realleges and incorporates as though set forth fully herein the allegations found in paragraphs 1 through 88 above.

90.  Cross-Defendants used, and continue to use in commerce false and misleading descriptions of fact and false and misleading representations of fact about the Software. Cross-Defendants continue to falsely represent to third parties

14

1  that TRINNOS and MITCHELL are the current exclusive owners of the Software,

2  and are authorized to sell licenses of the Software to third parties.

3      91.   Cross-Defendants made, and continue to make representations that

4  were and are likely to cause confusion, mistake, and/or to deceive as to the

5  affiliation, connection, or association of such Cross-Defendants with 3PL. Cross-

6  Defendants have made representations that the Software package offered by

7  TRINNOS is the same software package offered by 3PL, and therefore have caused

8  confusion, mistake, and deception by 3PL's former and current customers as to the

9  true owner and licensor of the Software package offered by 3PL.

10     92.   Cross-Defendants used, and continue to use in commerce words,

11  terms, names, symbols, and devices, and combinations thereof, which are likely to

12  cause confusion, mistake, and/or to deceive as to the affiliation, connection, or

13  association of such Cross-Defendants with 3PL. Specifically, Cross-Defendants are

14  offering the same exact Software package offered by 3PL to third parties, which

15  have caused confusion, mistake, and deception of 3PL's current and former

16  customers, and other third parties in the commercial freight transportation industry.

17     93.   Cross-Defendants' use of 3PL's design and software in the stream of

18  interstate commerce falsely designates and misrepresents the origin of TRINNOS

19  and MITCHELL's design and software, and creates a likelihood of confusion to

20  those third persons to whom Cross-Defendants made such representations.

21     94.   Cross-Defendants, in commercial advertising or promotion,

22  misrepresented the nature, characteristics, qualities and geographic origin of their

23  goods, services, and commercial activities, in that Cross-Defendants advertised and

24  promoted the Software as their own, and made derogatory and false representations

25  in regards to 3PL and to the characteristics, qualities and geographic origin of

26  3PL's goods, services, and commercial activities. For example, in April 2011,

27  Cross-Defendants have directly contacted 3PL's former and current customers and

28  offered them 3PL's exact same Software package as a product that is exclusively

1   owned and licensed by TRINNOS. Cross-Defendants also represented to 3PL's

2   former and current customers that 3PL's Software package was owned and licensed

3   by TRINNOS.

4       95.   In May 10, 2011 and again in May 20, 2011, LANSAGAN represented

5   to one of 3PL's customers that TRINNOS is offering a "new demo application" for

6   licensing. These representations were false because the "new demo application"

7   was in fact 3PL's own Software package.

8       96.   Cross-Defendants continue to make disparaging and false

9   representations as to the Software, and to the characteristics, qualities and

10  geographic origin of 3PL's goods, services, and commercial activities. Cross-

11  Defendants continue to market and advertise 3PL's Software package to be

12  exclusively owned and licensed by TRINNOS, since April 2011 to the present.

13      97.   Cross-Defendants, in forming and operating their business through the

14  misappropriation of 3PL's designs and products, have misrepresented the origin

15  and qualities of 3PL's products and designs in violation of Section 43(a) of the

16  Lanham Act, 15 U.S.C. § 1125(a).

17      98.   3PL has been damaged and continues to be damaged because of Cross-

18  Defendants' representations. Specifically, 3PL has lost customers, revenue,

19  reputation, good will, and value.

20      99.   Unless enjoined by this Court, Cross-Defendants will continue to

21  unlawfully advertise, represent, and promote the Software as their own, continue to

22  make misrepresentations regarding 3PL to 3PL's customers, and will cause

23  irreparable damage and injury to 3PL.

24      100.   3PL has no adequate remedy at law.

25      101.   3PL now prays for general damages, consequential damages,

26  injunctive relief, declaratory judgment, exemplary damages, and any other relief

27  that the court deems proper.

28

16

## Sixth Cause of Action

### Breach of Contract

### (Against WALTER L. MITCHELL, JONATHAN LANSAGAN, and CHRISTOPHER VINCIGUERRA)

102. 3PL realleges and incorporates as though set forth fully herein the allegations found in paragraphs 1 through 101 above.

103. MITCHELL, LANSAGAN, and VINCIGUERRA all have entered into written employment agreements with 3PL, and all their agreements incorporate the terms in 3PL's employee handbook.

104. MITCHELL, LANSAGAN, and VINCIGUERRA all have entered into confidentiality agreements with 3PL.

105. LANSAGAN's confidentiality agreement with 3PL is attached herein as Exhibit "C." In this confidentiality agreement, LANSAGAN promised to not disclose trade secrets, directly or indirectly, or use them in any way during and after LANSAGAN's employment with 3PL.

106. LANSAGAN also agreed not to solicit the customers or clients of 3PL for a period of twenty-four (24) months with respect to products or services that are competitive with 3PL's products or services.

107. VINCIGUERRA's confidentiality agreement with 3PL is attached herein as Exhibit "D." In this confidentiality agreement, VINCIGUERRA promised to not disclose trade secrets, directly or indirectly, or use them in any way during and after VINCIGUERRA's employment with 3PL.

108. VINCIGUERRA also agreed not to solicit the customers or clients of 3PL for a period of twenty-four (24) months with respect to products or services that are competitive with 3PL's products or services.

109. 3PL's employee handbook prohibits, amongst other things, the unauthorized possession of 3PL property, the negligent or deliberate destruction of 3PL property, unauthorized possession, use, copying of Company records,

17

1  disclosure of 3PL's information to unauthorized persons, disclosure of 3PL's

2  confidential information including customer lists, proposals, and financial

3  information, and engagement in outside employment and other business activity

4  that constitutes a conflict of interest with 3PL.

5      110.  3PL has performed any and all conditions, covenants, and promises

6  under the employment agreements and confidentiality agreements with

7  MITCHELL, LANSAGAN, and VINCIGUERRA.

8      111.  As set forth above, between 2005 to the present, MITCHELL has

9  breached his employment agreement and confidentiality agreement by, among other

10  things, misappropriating trade secrets, confidential information, and customer lists

11  from 3PL, diverting 3PL's company funds for his own use, engaging in business

12  activity that constitutes a conflict of interest with 3PL, destruction of 3PL property,

13  unauthorized disclosure of 3PL's confidential information, and illegally reselling

14  the Software which is the property of 3PL.

15      112.  MITCHELL, LANSAGAN and VICIGUERRA breached their

16  employment contracts and confidentiality contracts by, among other things,

17  misappropriating trade secrets, confidential information, and customer lists from

18  3PL, contacting and soliciting 3PL's customers within the prohibited time period,

19  engaging in outside employment and other business activity that constitutes a

20  conflict of interest with 3PL, unauthorized possession, destruction, and disclosure

21  of 3PL's confidential information, and making false and disparaging statements

22  about 3PL and its proprietary information.

23      113.  As a direct and proximate result of MITCHELL's, LANSAGAN's,

24  and VICIGUERRA's breaches, 3PL has suffered, and continues to suffer damages

25  in an amount to be determined according to proof at trial, but not less than

26  $1,000,000.

27

28

114. As a direct and proximate result of MITCHELL's LANSAGAN's and VINCIGUERRA's breaches, 3PL has incurred attorneys fees in an amount to be proven at or after trial.

**Seventh Cause of Action**

**Breach of Implied Covenant of Good Faith and Fair Dealing**

**(Against WALTER L. MITCHELL, JONATHAN LANSAGAN, and CHRISTOPHER VINCIGUERRA)**

115. 3PL realleges and incorporates as though set forth fully herein the allegations found in paragraphs 1 through 114 above.

116. A covenant of good faith and fair dealing is implied by law in all contracts. The covenant requires that neither party to a contract do anything to deprive the other of the benefits of the contract.

117. At the time that Cross-defendants MITCHELL, LANSAGAN, and VINCIGUERRA entered into employment agreements with 3PL, those cross-defendants implicitly agreed to act in good faith and deal fairly with 3PL. MITCHELL, LANSAGAN, and VINCIGUERRA agreed with 3PL to act, abide and perform the conditions and terms set forth in their employment agreements with 3PL in good faith and in a fair manner.

118. MITCHELL, LANSAGAN, and VINCIGUERRA breached their implied covenant to act in good faith, and they acted in bad faith when they took 3PL's proprietary information in order to make a profit for themselves with a competing firm Trinnos Technology LLC.

119. MITCHELL breached his implied covenant to act in good faith towards 3PL with MITCHELL diverted 3PL's company funds for his own personal gain including using 3PL's company credit cards to purchase personal items for himself, and diverting funds into his own personal accounts, without consent, authorization, or notification to 3PL.

19

120.   MITCHELL, LANSAGAN, and VINCIGUERRA breached the duty of good faith and fair dealing by promising 3PL without any intention of carrying out their promises in order to unjustly enrich themselves to the financial detriment of 3PL.

121.   Based on information and belief, MITCHELL, LANSAGAN, and VINCIGUERRA further breached the duty of good faith and fair dealing by other acts or omissions of which 3PL are presently unaware, and which will be shown according to proof at time of trial.

122.   As a direct and proximate result of MITCHELL, LANSAGAN, and VINCIGUERRA's breaches of this implied covenant, 3PL has been damaged in the sum of not less than $1,000,000, plus interest at the legal rate per annum since March 2010, as well as additional funds according to proof at time of trial, plus attorney's fees.

### Eighth Cause of Action

### Breach of Fiduciary Duty

### (Against WALTER L. MITCHELL)

123.   3PL realleges and incorporates as though set forth fully herein the allegations found in paragraphs 1 through 122 above.

124.   MITCHELL is currently a shareholder and partner of 3PL. MITCHELL was an officer of 3PL from 3PL's inception in 2005 until 2011. MITCHELL was a member of the Board of Directors of 3PL from 2005 until sometime in 2011.

125.   MITCHELL acted on 3PL's behalf for purposes of developing and managing the Software, as well as creating and drafting license agreements with 3PL's customers.

126.   During his employment with 3PL, MITCHELL misappropriated 3PL's trade secrets, confidential information, and customer lists, planned and executed his plan to steal 3PL's software and proprietary information in order to compete against

20

3PL, and solicit 3PL's customers and employees away from 3PL. MITCHELL also wrongfully accessed 3PL's electronically stored information and private networks to remove, delete, damage, and took and used confidential and proprietary information from 3PL without authorization, for his own benefit, and with the intent to injure 3PL.

127.   While MITCHELL was an officer, board member, and shareholder of 3PL, MITCHELL, among other things, created a business that is adverse to the interests of 3PL, diverted corporate funds of 3PL, wrongfully accessed and damaged 3PL's computer networks and systems, conspired with other 3PL employees to injure 3PL, and is now suing 3PL.

128.   MITCHELL failed to act as a reasonably careful shareholder, officer, board member, and partner of 3PL would have acted under the same or similar circumstances.

129.   3PL was and continues to be harmed in an amount to be proven at trial because of MITCHELL's actions;

130.   MITCHELL's conduct was a substantial factor in causing 3PL's harm.

131.   MITCHELL's conduct was done with malice, oppression, and/or fraud, in that MITCHELL had a willful and knowing disregard of the rights of 3PL, and deliberately acted with the intent to cause harm to 3PL, in that exemplary damages may be properly awarded against MITCHELL.

<u>**Ninth Cause of Action**</u>

**Aiding and Abetting Breach of Fiduciary Duty**

**(Against JONATHAN LANSAGAN, and CHRISTOPHER VINCIGUERRA)**

132.   3PL realleges and incorporates as though set forth fully herein the allegations found in paragraphs 1 through 131 above.

133.   MITCHELL is currently a shareholder and partner of 3PL.

21

134.   MITCHELL acted on 3PL's behalf for purposes of developing and managing the Software, as well as creating and drafting license agreements with 3PL's customers.

135.   During his employment with 3PL, MITCHELL misappropriated 3PL's trade secrets, confidential information, and customer lists, planned and executed his plan to steal 3PL's software and proprietary information in order to compete against 3PL, and solicit 3PL's customers and employees away from 3PL.

136.   While MITCHELL is a partner and shareholder of 3PL, MITCHELL created a business that is adverse to the interests of 3PL, diverted corporate funds of 3PL, wrongfully accessed and damaged 3PL's computer networks and systems, and is suing 3PL.

137.   MITCHELL failed to act as a reasonably careful shareholder and partner of 3PL would have acted under the same or similar circumstances.

138.   LANSAGAN and VINCIGUERRA had actual knowledge of MITCHELL's misappropriation of 3PL's trade secrets, as well as MITCHELL's plan and conspiracy to injure and compete against 3PL.

139.   LANSAGAN and VINCIGUERRA knowingly participated in aiding and abetting MITCHELL in the misappropriation of 3PL's trade secrets, and knowingly participated in MITCHELL's plan and conspiracy to injure and compete against 3PL. LANSAGAN and VINCIGUERRA's actions included misappropriating 3PL's trade secrets themselves, deleting electronically stored information on 3PL's computer networks and systems, and disrupting 3PL's business activities.

140.   MITCHELL knowingly induced LANSAGAN and VINCIGUERRA in participating in their activities, including but not limited to misappropriation of 3PL's trade secrets, deleting electronically stored information on 3PL's computer networks and systems, and disrupting 3PL's business activities.

141.   3PL was and continues to be harmed in an amount to be proven at trial because of Cross-Defendants' actions;

142.   Cross-Defendants' conduct was a substantial factor in causing 3PL's harm.

### Tenth Cause of Action

### Breach of the Duty of Loyalty

### (Against WALTER L. MITCHELL, JONATHAN LANSAGAN, and CHRISTOPHER VINCIGUERRA)

143.   3PL realleges and incorporates as though set forth fully herein the allegations found in paragraphs 1 through 142 above.

144.   MITCHELL is currently a shareholder and partner of 3PL.

145.   MITCHELL acted on 3PL's behalf for purposes of developing and managing the Software, as well as creating and drafting license agreements with 3PL's customers.

146.   During his employment with 3PL, MITCHELL knowingly misappropriated 3PL's trade secrets, confidential information, and customer lists, planned and executed his plan to steal 3PL's software and proprietary information in order to compete against 3PL, and solicit 3PL's customers and employees away from 3PL.

147.   While MITCHELL was a partner and shareholder of 3PL, MITCHELL created a business that is adverse to the interests of 3PL, diverted corporate funds of 3PL, wrongfully accessed and damaged 3PL's computer networks and systems, and is suing 3PL.

148.   MITCHELL knowingly acted against the interests of 3PL during his employment with 3PL, and acted against the interests of 3PL while he was a partner and shareholder of 3PL.

149. MITCHELL continues to act on against the interest of 3PL while performing as an agent, officer, and employee of 3PL's competitor Trinnos, whose interest are adverse to 3PL.

150. 3PL did not give informed consent to any of MITCHELL's wrongful conduct, as alleged herein.

151. 3PL was and continues to be harmed in an amount to be proven at trial because of MITCHELL's actions.

152. MITCHELL's conduct was a substantial factor in causing 3PL's harm.

153. Cross-Defendants' conduct was done with malice, oppression, and/or fraud, in that Cross-Defendants acted with willful and knowing disregard of the rights of 3PL, and deliberately acted with the intent to cause harm to 3PL, in that exemplary damages may be properly awarded against Cross-Defendants.

## Eleventh Cause of Action

### Negligent Misrepresentation

### (Against All Cross-Defendants)

154. 3PL realleges and incorporates as though set forth fully herein the allegations found in paragraphs 1 through 153 above.

155. Cross-Defendants represented to third parties such as 3PL's current and former customers and to 3PL that certain facts were true, including but not limited to the fact that cross-defendants were the owners of the Software and other proprietary information.

156. MITCHELL made false representations to 3PL including stating that he was developing and managing the Software for the benefit of 3PL, and that 3PL and DTS would be the exclusive owners of the Software.

157. MITCHELL made false representations to the U.S. Copyright Office including stating that MITCHELL was the exclusive author and owner of the

24

1  Software, and that MITCHELL was not categorized as "work-for-hire" as described

2  in his applications to the U.S. Copyright Office.

3      158. VINCIGUERRA made false representations to 3PL's current and

4  former customers including stating that TRINNOS was the owner of the Software

5  and was authorized to sell licenses with regard to the Software.

6      159. In March 2011, VINCIGUERRA made false representations to 3PL

7  including stating that he would not alter, delete or damage any of 3PL's emails and

8  electronically stored information.

9      160. LANSAGAN made false representations to 3PL's current and former

10  customers including stating that TRINNOS was the owner of the Software and was

11  authorized to sell licenses with regard to the Software.

12      161. In March 2011, LANSAGAN made false representations to 3PL,

13  including stating that he would not alter, delete or damage any of 3PL's emails and

14  electronically stored information.

15      162. Although Cross-Defendants may have honestly believed that the

16  representations were true, Cross-Defendants had no reasonable grounds for

17  believing the representations were true when they made it.

18      163. Cross-Defendants intended that third parties and 3PL rely on these

19  representations.

20      164. That third parties and 3PL were ignorant of the truth and did

21  reasonably rely on Cross-Defendants' representations.

22      165. 3PL was harmed, and 3PL's reliance on Cross-Defendants'

23  representations was a substantial factor in causing 3PL's harm.

24  **Twelfth Cause of Action**

25  **Fraudulent Concealment**

26  **(Against WALTER L. MITCHELL)**

27      166. 3PL realleges and incorporates as though set forth fully herein the

28  allegations found in paragraphs 1 through 165 above.

25