1  BROWN, WEGNER & BERLINER LLP
   Matthew A. Berliner (SBN 224384)
2  mberliner@bwb-lawyers.com
   William J. Brown, Jr. (SBN 192950)
3  bill@bwb-lawyers.com
   Janet S. Park (SBN 263511)
4  jpark@bwb-lawyers.com
   2603 Main Street, Suite 1050
5  Irvine, California 92614
   Tel: 949-705-0080  Fax: 949-794-4099
6
   Attorneys for Defendant/Cross-Complainant
7  3PL Systems, Inc.

8

9              **UNITED STATES DISTRICT COURT**

10             **CENTRAL DISTRICT OF CALIFORNIA**

11

| | |
|---|---|
| 12  WALTER L. MITCHELL, III, an individual, | Case No.: SACV11-00534 AG(ANx) Hon. Andrew J. Guilford/ Ctrm D |
| 13 | |
| 14           Plaintiff, | **3PL SYSTEMS, INC.'S SECOND AMENDED CROSS-COMPLAINT FOR:** |
| 15      v. | |
| 16  3PL SYSTEMS, INC., a California Corporation, | 1.  VIOLATION OF THE UNIFORM TRADE SECRETS ACT |
| 17           Defendants. | 2.  DECLARATORY JUDGMENT 3.  VIOLATION OF THE STORED WIRE AND ELECTRONIC COMMUNICATIONS AND TRANSACTIONAL RECORDS ACCESS ACT |
| 18 | |
| 19  3PL SYSTEMS, INC., a California Corporation, | |
| 20           Cross-Complainant, | 4.  VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT |
| 21      v. | 5.  VIOLATION OF THE LANHAM ACT |
| 22  WALTER L. MITCHELL, III, an individual, JONATHAN LANSAGAN, an individual, CHRISTOPHER VINCIGUERRA, an individual, TRINNOS TECHNOLOGY LLC, a California Limited Liability Corporation, and ROES 1-10, inclusive, | 6.  BREACH OF CONTRACT 7.  BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING |
| 23 | 8.  BREACH OF FIDUCIARY DUTY |
| 24 | 9.  AIDING AND ABETTING BREACH OF FIDUCIARY DUTY |
| 25 | 10. BREACH OF DUTY OF LOYALTY |
| 26           Cross-Defendants. | 11. NEGLIGENT MISREPRESENTATION |
| 27 | 12. CONCEALMENT 13. VIOLATION OF B&P § 17200 |
| 28 | 14. VIOLATION OF B&P §17500 |

1

15. COPYRIGHT INFRINGEMENT
16. CONTRIBUTORY INFRINGEMENT
17. CONVERSION
18. TORTIOUS INTERFERENCE WITH CONTRACT

**DEMAND FOR JURY TRIAL**

## JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction over this Cross-Complaint under 18 U.S.C. § 1331 because the claims in this Cross-Complaint arise from the laws of the United States.

2.     This Court has subject matter jurisdiction over this Cross-Complaint under 28 U.S.C. § 1367 because the claims in this Cross-Complaint are so related to the claims in the original action so that they form part of the same case or controversy under Article III of the United States Constitution.

3.     This Court has personal jurisdiction over WALTER L. MITCHELL ("MITCHELL") because MITCHELL is an individual residing in Irvine, California, and is located in this Court's jurisdiction.

4.     This Court has personal jurisdiction over JONATHAN LANSAGAN ("LANSAGAN") because LANSAGAN is an individual residing in Orange County, California, and is located in this Court's jurisdiction.

5.     This Court has personal jurisdiction over CHRISTOPHER VINCIGUERRA ("VINCIGUERRA") because VINCIGUERRA is an individual with sufficient contacts with, and has availed himself to Orange County, California for this Court to assert jurisdiction over VINCIGUERRA pursuant to 28 U.S.C. § 1367.

6.     This Court has personal jurisdiction over TRINNOS TECHNOLOGY LLC ("TRINNOS") because TRINNOS is a limited liability corporation organized and existing under the laws of the State of California, and its principle place of business is located in Orange County, California.

2

7.      Venue is proper because all of the events and omissions giving rise to the Plaintiff's cross-claims occurred in this district, and this district court has jurisdiction over Plaintiff's cross-claims.

## PARTIES

8.      Cross-Complainant 3PL SYSTEMS, INC. ("3PL") is a California corporation organized and existing under the laws of the State of California.

9.      Cross-Defendant WALTER L. MITCHELL is an individual residing in Irvine, California.

10.     Cross-Defendant JONATHAN LANSAGAN is an individual residing in Irvine, California.

11.     Cross-Defendant CHRISTOPHER VINCIGUERRA is an individual residing in Cedar Park, Texas.

12.     Cross-Defendant TRINNOS is a limited liability corporation organized and existing under the laws of the State of California.

13.     3PL is ignorant of the true names and capacities of Cross-Defendants sued herein as ROES 1 through 10, inclusive, and therefore sues these Cross-Defendants by such fictitious names. 3PL will seek leave to amend this Cross-Complaint to allege the true names and capacities of such fictitious Cross-Defendants when they are ascertained. 3PL alleges that each of the Cross-Defendants sued herein as ROES 1 through 10, inclusive, is in some manner responsible in whole or in part for the injuries which have been, are being, and will be suffered by 3PL as alleged herein resulting in or contributing to the other cross-defendant's actions which are injurious to 3PL.

## BACKGROUND FACTS

14.     In 1990, Marc Meskin and Robby Thone formed a corporation called DTM Services Inc. dba Diversified Transportation Services ("DTS"), which is a transportation brokerage firm. In or around 1992, DTS developed a transportation

3

1   management software for their own use to streamline their coordination of

2   transportation services by various carriers.

3       15.   Seeing a business opportunity to license this transportation

4   management software to third parties, DTS decided to further develop the software

5   program and a website known as "Freightsaver.com" ("Software").  In 2000, DTS

6   contracted with MITCHELL to further develop the Software for third party

7   licensees. The Software was already created and being used by DTS, but needed

8   some additional development and changes to the user interface in order to be used

9   by third party licensees. The Software was created, owned and developed by DTS.

10      16.   In 2000, MITCHELL was an employee with Hyundai Motor

11  Company, and had no knowledge of the specialized freight services industry.

12  MITCHELL was hired by DTS to write code for the Software under the direction

13  and control of Marc Meskin.  MITCHELL eventually quit his job at Hyundai Motor

14  Company to work for DTS full time.

15      17.   In or around February 1, 2003, Marc Meskin met with MITCHELL

16  and gave MITCHELL detailed requirements and descriptions for MITCHELL to

17  strictly follow, in order to improve the Software.  These requirements and

18  descriptions clearly stated that the Software was already created, and MITCHELL

19  was merely improving the Software for DTS.

20      18.   During the time MITCHELL worked for DTS, DTS paid MITCHELL

21  an informal salary, where MITCHELL would be paid flat monthly fees for his

22  work.  There was no set duration of time for MITCHELL's work.

23      19.   During the time MITCHELL worked for DTS, MITCHELL worked

24  jointly alongside other software developers, and worked together with DTS

25  employees and contractors to improve the Software.  MITCHELL frequently met

26  with Meskin in so that Meskin could control the progress, output and structure of

27  the Software.

28

4

20.    On or about August 8, 2002, MITCHELL entered into an agreement with DTS entitled "Letter of Understanding" wherein MITCHELL agreed to continue to develop and work on the Software full time for DTS.

21.    On or about October 21, 2003, MITCHELL entered into a written agreement wherein MITCHELL agreed to continue to develop the Software with the intention that a new entity would be formed to market and sell the software. This agreement did not have a set duration in time.  A true and correct copy of this agreement is attached hereto and incorporated by reference herein as Exhibit "A." What is notable is that Exhibit "A" previously contained a term which allowed MITCHELL to have exclusive rights to develop and manage the development of the Software, but this term was removed by the parties.

22.    In 2005, MITCHELL, together with Meskin and Thone, created a corporation entitled 3PL Systems, Inc. ("3PL").  MITCHELL, Meskin, and Thone became shareholders of 3PL in 2005.  MITCHELL became a full-time employee, officer, and board member of 3PL in 2005, at the time of 3PL's inception.

23.    3PL was a small technology start-up company that focused on licensing software to third parties.  3PL was created in order to market and sell the Software owned by DTS.

24.    3PL hired several software developers to continually develop and improve the code. MITCHELL worked jointly alongside these 3PL software developers, and worked full time together with 3PL employees and contractors to improve the Software, from 2005 to 2011.

25.    From 2005 to 2011, MITCHELL had a wide range of job responsibilities, including continually developing source code and software, technical support, and preparing licensing agreements with 3PL's customers when customers desired to purchase a copy of the Software from 3PL.  A true and correct copy of a typical form licensing agreement is attached hereto and incorporated by referenced herein as Exhibit "B."

5

1      26.    MITCHELL's licensing agreements that he drafted for 3PL's

2    customers include language that clearly states that 3PL is the exclusive owner of all

3    rights to the Software.

4      27.    At some point from 2005 to 2011, unbeknownst to 3PL and DTS,

5    MITCHELL devised and implemented a plan to steal the rights to the Software, and

6    planned to start a competing business.

7      28.    In furtherance of his plan, MITCHELL began illegally collecting

8    confidential information, trade secrets, computer code, and customer lists from 3PL

9    without notification to 3PL or the consent of 3PL, and without authorization.

10      29.    Also in furtherance of his plan, in 2005, MITCHELL decided to

11    register the Software with the U.S. Copyright Office in order to later fraudulently

12    claim rights to the Software.  Even though MITCHELL knew the Software was

13    owned by 3PL, MITCHELL submitted his application stating that he was the sole

14    owner of the Software.  MITCHELL did so without notification to 3PL, and

15    without consent from 3PL.

16      30.    During this time from 2005 to 2011, MITCHELL took 3PL funds for

17    his own use and purposes, including using 3PL's company credit card to purchase

18    personal items for himself and 3PL employees, without the consent of 3PL.  Also

19    during this time, MITCHELL diverted 3PL's company funds into his personal bank

20    accounts in order to use them for his own purposes, including saving up to set up

21    his own competing business.  MITCHELL also improperly used 3PL company

22    funds to pay for the personal expenses of other 3PL employees, in violation of

23    3PL's policies.

24      31.    In 2007 MITCHELL filed an application with the US Copyright Office

25    in order to update the registration of the Software, which was now further

26    developed.  MITCHELL again submitted his application stating that he was the sole

27    owner of the Software, even though he knew that the further-developed Software

28

1  was still owned by 3PL, and MITCHELL had no ownership interest in the

2  Software.  MITCHELL did so without notification to 3PL, or consent from 3PL.

3      32.    MITCHELL's wrongful activities were not discovered until December

4  2010.

5      33.    On or around March 17, 2011, MITCHELL was terminated from his

6  employment with 3PL.

7      34.    After his termination from 3PL Systems, MITCHELL, without

8  authorization, accessed and damaged 3PL's computers and servers.  MITCHELL

9  blocked 3PL's employees from having access to their computer files, and caused

10  serious damage and interruption of business for 3PL. MITCHELL also tampered

11  with DTS' computer networks and systems, and caused damage to both DTS and

12  3PL.

13      35.    On or around March 2011, MITCHELL also illegally accessed DTS'

14  email system and sent emails from 3PL's employees' and officers' accounts to third

15  parties.  MITCHELL also sent threatening emails to DTS' and 3PL's officers and

16  employees.  This damaged 3PL's computer networks and systems, and caused

17  significant disruption and interruption to 3PL's business.

18      36.    On or around January 2011, MITCHELL's father also made several

19  threatening phone calls to 3PL's officers and employees under MITCHELL's

20  direction and authorization.

21      37.    Because of MITCHELL's actions, 3PL had to hire additional security

22  guards, put in additional security measures, and hire consultants to fix the damage

23  done by MITCHELL.

24      38.    From around December 2010 to the present, MITCHELL and the other

25  Cross-Defendants have made false and disparaging statements about 3PL systems

26  to 3PL customers.

27      39.    Based on information and belief, sometime in Spring 2011 both before

28  and after the termination of his employment, MITCHELL recruited several 3PL

1   employees including LANSAGAN and VICIGUERRA, in order to conspire
2   together to compete with and injure 3PL.  While still employed with 3PL, these
3   recruited employees failed to perform their material job duties and intentionally
4   deleted, altered and destroyed 3PL's electronic files.

5       40.    In April 2011, MITCHELL formed a company called Trinnos
6   Technology LLC ("Trinnos"), which is the named cross-defendant in this action, in
7   order to market and sell the Software as his own.  MITCHELL hired then-current
8   3PL employees to work for MITCHELL and TRINNOS in furtherance of
9   MITCHELL's conspiracy to injure 3PL.

10      41.    In April 2011, Trinnos began licensing 3PL's software to third parties,
11  and distributed licensing agreements and documents to third parties, falsely
12  claiming that Trinnos was the sole owner of the copyright of 3PL's software.  In
13  April 2011 to the present, Trinnos has no copyright registration for any software.

14      42.    Also in furtherance of his plan, on April 7, 2011, MITCHELL filed a
15  lawsuit against 3PL alleging copyright infringement claims based on his fraudulent
16  copyright applications, in an effort to utilize the judicial system to steal the
17  Software from 3PL.

18      43.    Currently, all Cross-Defendants are continuing to conduct business,
19  wrongfully competing against 3PL by using 3PL's trade secrets, customer lists,
20  confidential information, computer code, and wrongfully promoting, advertising,
21  and reselling the Software owned by 3PL.

22      44.    In June 2011, 3PL applied for copyright protection for its Software.

23      45.    3PL now claims that it is the rightful owner of all rights to the
24  Software, and requests a judicial determination of the rights of all parties with
25  regards to the Software, as well as damages against all cross-defendants for their
26  wrongful and injurious acts against 3PL.

27
28

## CLAIMS FOR RELIEF

### First Cause of Action

### Violation of the California Uniform Trade Secrets Act –

### Civil Code §3426 *et seq*.

### (Against all Cross-Defendants)

46.     3PL realleges and incorporates as though set forth fully herein the allegations found in paragraphs 1 through 45 above.

47.     3PL is the owner and/or the licensee of the Software, as well as confidential information, trade secrets, customer lists, and computer code.

48.     3PL has used reasonable efforts under the circumstances to maintain the secrecy of its trade secrets, confidential information, customer lists, and computer codes, including having its employees sign confidentiality agreements.

49.     Cross-Defendants were employees of 3PL, wherein Cross-Defendants signed confidentiality agreements where Cross-Defendants agreed to keep 3PL's trade secrets, confidential information, customer lists, and computer code secret.

50.     "Confidential information" includes data, formulas, patterns, compilations, programs, devices, methods, techniques and processes owned, authored, developed and used by 3PL during the course of its business.

51.     "Trade secrets" includes 3PL's data, formulas, patterns, compilations, programs, devices, methods, techniques, and processes pertaining to transportation services management, including data pertaining to the Software, that is not generally known to the public that has economic value from preventing disclosure or use by third parties of such information.

52.     3PL has used reasonable efforts under the circumstances to maintain the secrecy of its trade secrets, including utilizing secured computer and network systems, security computer codes, and confidentiality agreements with all employees.

9

53.   "Customer lists" includes 3PL's compilations, lists, memoranda, emails, letters, correspondence, invoices, receipts, records, and other documents that include information regarding the identity of any of 3PL's customers.

54.   3PL's customer lists have economic value because the disclosure of 3PL's customer lists would allow a competitor to direct its sales efforts to those customers who have shown a willingness to use a unique type of service and products.

55.   "Computer code" includes 3PL's program instructions, source code and source code files, machine code, machine language, rules, system of symbols, program files, compilation instructions, linking information, algorithms, and any other programming language sets and electronically stored information that relates to 3PL's software.

56.   Cross-Defendants misappropriated these trade secrets, confidential information, customer lists, and computer codes by improper acquisition, unconsented use and improper disclosure, without 3PL's consent.  Cross-Defendants misappropriated trade secrets, confidential information, customer lists, and computer codes with the knowledge that such information constitutes trade secrets and confidential information, without 3PL's consent.

57.   Cross-Defendants improperly took information from 3PL's computer and deleted important emails and electronically stored files without consent, and with the knowledge that such actions were wrongful.

58.   Cross-Defendants knew or should have known that such trade secrets, confidential information, customer lists, and computer codes were acquired by improper means by the other Cross-Defendants.

59.   Cross-Defendants have improperly, systematically, and without authorization retained, disclosed and exploited 3PL's trade secrets, confidential information, customer lists, and computer codes for the purposes of soliciting customers to cease doing business with 3PL and start doing business with Cross-

1    Defendants.  Cross-Defendants have engaged in this conduct and continue to do so

2    despite demands from 3PL that they cease and desist such unlawful behavior and

3    return all of 3PL's trade secrets, confidential information, customer lists, and

4    computer codes.

5         60.    Cross-Defendants' continued retention, disclosure and use of 3PL's

6    3PL's trade secrets, confidential information, customer lists, and computer codes as

7    alleged herein above, constitutes actual and threatened misappropriation of trade

8    secrets pursuant to the California Uniform Trade Secrets Act, Cal. Civ. Code §§

9    3426, *et seq.*

10        61.    Cross-Defendant's actions were a substantial factor in causing damage

11   to 3PL in the form of lost revenue, loss of business, loss of customers, and other

12   damage to be proven at trial.

13        62.    Cross-Defendant's misappropriation was a substantial factor in causing

14   Cross-defendant to be unjustly enriched.

15        63.    3PL requests that a constructive trust be imposed over any and all

16   profits gained because of Cross-Defendant's misappropriation of 3PL's trade

17   secrets.

18        64.    3PL also requests that Cross-Defendants pay 3PL a reasonable royalty

19   for the use and resale of the Software from the time period of the first sale of the

20   software by Cross-Defendants to the time that this injunction is implemented.

21        65.    As a proximate result of Cross-Defendants' conduct, 3PL has suffered

22   irreparable injury.  Unless Cross-Defendants are restrained and/or enjoined, 3PL

23   faces an immediate threat of continuing irreparable harm.  3PL has suffered and

24   will continue suffer irreparable injury for which 3PL lacks an adequate remedy at

25   law.  Thus, 3PL requests that a preliminary and permanent injunction be imposed

26   over Cross-Defendants enjoining them from the use, disclosure, and acquisition of

27   3PL's trade secrets, confidential information, computer code, software systems, and

28   customer lists.

11

66.     Cross-Defendants have willfully and maliciously misappropriated 3PL's trade secrets, customer lists, confidential information, computer codes and the Software, with the knowledge that Cross-Defendants have wrongfully acquired and utilized such information.  Thus, 3PL requests that this court award 3PL exemplary damages in an amount to be proven at trial, pursuant to Civil Code § 3426.3.

### Second Cause of Action

### Declaratory Judgment

### (Against WALTER L. MITCHELL)

67.     3PL realleges and incorporates as though set forth fully herein the allegations found in paragraphs 1 through 66 above.

68.     MITCHELL filed two or more applications for the Software in the US Copyright Office in order to secure an exclusive right and/or a limited monopoly that is not granted by the Copyright office, which is against public policy.

69.     MITCHELL filed his applications in order to enforce the provisions of the copyrights to secure more extensive rights than granted by the Copyright Act embodied under 17 U.S.C. §§101 *et seq.*

70.     MITCHELL filed a lawsuit claiming copyright infringement by 3PL with regards to the Software. MITCHELL filed his copyright applications and his lawsuit with the knowledge that 3PL has ownership and/or licensing rights to the Software, and such actions were wholly without merit. There is currently a substantial controversy that exists as to the rights to the Software.

71.     3PL now requests that the court issue an order precluding MITCHELL from enforcing his copyright registrations from the time period of the date of filing all applications until a determination has been made regarding MITCHELL's rights to the Software.

12

72.     3PL also seeks a declaration that MITCHELL's copyright applications are invalid, and any rights MITCHELL may claim to the Software are deemed invalid.

73.     3PL also seeks an order from this court ordering MITCHELL to cancel his copyrights as registered in the U.S. Copyright Office.

### Third Cause of Action

### Violation of the Stored Wire and Electronic Communications and

### Transactional Records Access Act

### (Against WALTER L. MITCHELL, III)

74.     3PL realleges and incorporates as though set forth fully herein the allegations found in paragraphs 1 through 73 above.

75.     3PL's computers are protected computers because 3PL's computers are used in interstate commerce and communication. 3PL provides electronic communication services to its employees and customers.

76.     MITCHELL was not authorized to access email and computer accounts that were assigned to other 3PL employees.

77.     In March 2011, MITCHELL intentionally accessed 3PL's email system without authorization and altered, deleted, and sent out email messages in other 3PL employees' accounts in order to cause damage to 3PL.

78.     In March 2011, MITCHELL intentionally blocked access to 3PL's email system, and 3PL employees were not able to access their accounts, and 3PL's business was disrupted because of MITCHELL's unauthorized access.

79.     In March 2011, MITCHELL intentionally altered 3PL's email and computer accounts so that 3PL employees were prevented from accessing their accounts, and 3PL's business was disrupted because of MITCHELL's unauthorized alteration.

80.     In March 2011, MITCHELL intentionally accessed parts of 3PL's computer and email systems that he was not authorized to access, including 3PL's

13

1   electronic storage systems in conjunction with 3PL's email systems in order to

2   damage and disrupt 3PL's business.

3        81.    3PL was directly and proximately damaged because of MITCHELL's

4   unauthorized access, alteration, and disruption of 3PL's email and computer

5   networks.

6        82.    3PL now seeks general and compensatory damages, and other

7   equitable relief that the court deems proper.

8                          **Fourth Cause of Action**

9            **Violation of the Computer Fraud and Abuse Act**

10      **(Against WALTER L. MITCHELL, JONATHAN LANSAGAN, and**

11                     **CHRISTOPHER VINCIGUERRA)**

12       83.    3PL realleges and incorporates as though set forth fully herein the

13   allegations found in paragraphs 1 through 82 above.

14       84.    3PL's computers are protected computers because 3PL's computers

15   are used in interstate commerce and communication.

16       85.    Cross-Defendants MITCHELL, LANSAGAN, and VINCIGUERRA

17   intentionally accessed 3PL's computers without authorization and/or exceeded their

18   authorized access to obtain information involving interstate communications,

19   including emails, customer information, financial records, telephone numbers,

20   addresses, and other confidential information regarding the marketing and sales to

21   customers in different states.

22       86.    Cross-Defendants MITCHELL, LANSAGAN, and VINCIGUERRA

23   exceeded their authorized access because they had agreed in their employment and

24   confidentiality agreements with 3PL to not use or disclose 3PL's trade secrets

25   without written permission from 3PL.  MITCHELL, LANSAGAN and

26   VINCIGUERRA promised to not use or disclose 3PL's proprietary information for

27   the personal benefit of themselves or for the benefit of any person, firm, company

28   or corporation other than 3PL.

14

87.     In March 2011, MITCHELL intentionally accessed 3PL's email system without authorization and altered, deleted, and sent out email messages in order to cause damage to 3PL.

88.     In March 2011, LANSAGAN intentionally accessed 3PL's email system without authorization and altered, deleted, and sent out email messages in order to cause damage to 3PL.

89.     In March 2011, VINCIGUERRA intentionally accessed 3PL's email system without authorization and altered, deleted, and sent out email messages in order to cause damage to 3PL.

90.     In March 2011, LANSAGAN and VINCIGUERRA attempted to "scrub" their computers thereby damaging and deleting 3PL's electronically stored information and computer systems.

91.     Cross-Defendants MITCHELL, LANSAGAN, and VINCIGUERRA knowingly accessed 3PL's computers with the intent to defraud and obtained confidential proprietary information for their own gain, and to the detriment of 3PL.

92.     Cross-Defendants MITCHELL, LANSAGAN, and VINCIGUERRA's has and will continue to distribute 3PL's confidential proprietary information to third parties and earn a profit off of 3PL's confidential proprietary information.

93.     Cross-Defendants MITCHELL, LANSAGAN, and VINCIGUERRA's unauthorized access to 3PL's computers caused damage to 3PL in an amount greater than $5,000, to be determined at trial.

94.     3PL now seeks general and compensatory damages, injunctive relief and other equitable relief that the court deems proper.

### Fifth Cause of Action

### Violation of the Lanham Act – 15 U.S.C. §1125(a)

### (Against All Cross-Defendants)

95.     3PL realleges and incorporates as though set forth fully herein the allegations found in paragraphs 1 through 94 above.

15

96.     Cross-Defendants used, and continue to use in commerce false and misleading descriptions of fact and false and misleading representations of fact about the Software.  Cross-Defendants continue to falsely represent to third parties that TRINNOS and MITCHELL are the current exclusive owners of the Software, and are authorized to sell licenses of the Software to third parties.

97.     Cross-Defendants made, and continue to make representations that were and are likely to cause confusion, mistake, and/or to deceive as to the affiliation, connection, or association of such Cross-Defendants with 3PL.  Cross-Defendants have made representations that the Software package offered by TRINNOS is the same software package offered by 3PL, and therefore have caused confusion, mistake, and deception by 3PL's former and current customers as to the true owner and licensor of the Software package offered by 3PL.

98.     Cross-Defendants used, and continue to use in commerce words, terms, names, symbols, and devices, and combinations thereof, which are likely to cause confusion, mistake, and/or to deceive as to the affiliation, connection, or association of such Cross-Defendants with 3PL.  Specifically, Cross-Defendants are offering the same exact Software package offered by 3PL to third parties, which have caused confusion, mistake, and deception of 3PL's current and former customers, and other third parties in the commercial freight transportation industry.

99.     Cross-Defendants' use of 3PL's design and software in the stream of interstate commerce falsely designates and misrepresents the origin of TRINNOS and MITCHELL's design and software, and creates a likelihood of confusion to those third persons to whom Cross-Defendants made such representations.

100.    Cross-Defendants, in commercial advertising or promotion, misrepresented the nature, characteristics, qualities and geographic origin of their goods, services, and commercial activities, in that Cross-Defendants advertised and promoted the Software as their own, and made derogatory and false representations in regards to 3PL and to the characteristics, qualities and geographic origin of

16

1   3PL's goods, services, and commercial activities. For example, in April 2011,

2   Cross-Defendants have directly contacted 3PL's former and current customers and

3   offered them 3PL's exact same Software package as a product that is exclusively

4   owned and licensed by TRINNOS.  Cross-Defendants also represented to 3PL's

5   former and current customers that 3PL's Software package was owned and licensed

6   by TRINNOS.

7       101.   In May 10, 2011 and again in May 20, 2011, LANSAGAN represented

8   to one of 3PL's customers that TRINNOS is offering a "new demo application" for

9   licensing. These representations were false because the "new demo application"

10   was in fact 3PL's own Software package.

11       102.   Cross-Defendants continue to make disparaging and false

12   representations as to the Software, and to the characteristics, qualities and

13   geographic origin of 3PL's goods, services, and commercial activities.  Cross-

14   Defendants continue to market and advertise 3PL's Software package to be

15   exclusively owned and licensed by TRINNOS, since April 2011 to the present.

16       103.   Cross-Defendants, in forming and operating their business through the

17   misappropriation of 3PL's designs and products, have misrepresented the origin

18   and qualities of 3PL's products and designs in violation of Section 43(a) of the

19   Lanham Act, 15 U.S.C. § 1125(a).

20       104.   3PL has been damaged and continues to be damaged because of Cross-

21   Defendants' representations. Specifically, 3PL has lost customers, revenue,

22   reputation, good will, and value.

23       105.   Unless enjoined by this Court, Cross-Defendants will continue to

24   unlawfully advertise, represent, and promote the Software as their own, continue to

25   make misrepresentations regarding 3PL to 3PL's customers, and will cause

26   irreparable damage and injury to 3PL.

27       106.   3PL has no adequate remedy at law.

28

107.   3PL now prays for general damages, consequential damages, injunctive relief, declaratory judgment, exemplary damages, and any other relief that the court deems proper.

### Sixth Cause of Action

### Breach of Contract

### (Against WALTER L. MITCHELL, JONATHAN LANSAGAN, and CHRISTOPHER VINCIGUERRA)

108.   3PL realleges and incorporates as though set forth fully herein the allegations found in paragraphs 1 through 107 above.

109.   MITCHELL, LANSAGAN, and VINCIGUERRA all have entered into written employment agreements with 3PL, and all their agreements incorporate the terms in 3PL's employee handbook.

110.   MITCHELL, LANSAGAN, and VINCIGUERRA all have entered into confidentiality agreements with 3PL.

111.   LANSAGAN's confidentiality agreement with 3PL is attached herein as Exhibit "C." In this confidentiality agreement, LANSAGAN promised to not disclose trade secrets, directly or indirectly, or use them in any way during and after LANSAGAN's employment with 3PL.

112.   LANSAGAN also agreed not to solicit the customers or clients of 3PL for a period of twenty-four (24) months with respect to products or services that are competitive with 3PL's products or services.

113.   VINCIGUERRA's confidentiality agreement with 3PL is attached herein as Exhibit "D." In this confidentiality agreement, VINCIGUERRA promised to not disclose trade secrets, directly or indirectly, or use them in any way during and after VINCIGUERRA's employment with 3PL.

114.   VINCIGUERRA also agreed not to solicit the customers or clients of 3PL for a period of twenty-four (24) months with respect to products or services that are competitive with 3PL's products or services.

115.   3PL's employee handbook prohibits, amongst other things, the unauthorized possession of 3PL property, the negligent or deliberate destruction of 3PL property, unauthorized possession, use, copying of Company records, disclosure of 3PL's information to unauthorized persons, disclosure of 3PL's confidential information including customer lists, proposals, and financial information, and engagement in outside employment and other business activity that constitutes a conflict of interest with 3PL.

116.   3PL has performed any and all conditions, covenants, and promises under the employment agreements and confidentiality agreements with MITCHELL, LANSAGAN, and VINCIGUERRA.

117.   As set forth above, between 2005 to the present, MITCHELL has breached his employment agreement and confidentiality agreement by, among other things, misappropriating trade secrets, confidential information, and customer lists from 3PL, diverting 3PL's company funds for his own use, engaging in business activity that constitutes a conflict of interest with 3PL, destruction of 3PL property, unauthorized disclosure of 3PL's confidential information, and illegally reselling the Software which is the property of 3PL.

118.   MITCHELL, LANSAGAN and VICIGUERRA breached their employment contracts and confidentiality contracts by, among other things, misappropriating trade secrets, confidential information, and customer lists from 3PL, contacting and soliciting 3PL's customers within the prohibited time period, engaging in outside employment and other business activity that constitutes a conflict of interest with 3PL, unauthorized possession, destruction, and disclosure of 3PL's confidential information, and making false and disparaging statements about 3PL and its proprietary information.

119.   As a direct and proximate result of MITCHELL's, LANSAGAN's, and VICIGUERRA's breaches, 3PL has suffered, and continues to suffer damages

1   in an amount to be determined according to proof at trial, but not less than

2   $1,000,000.

3       120.   As a direct and proximate result of MITCHELL's LANSAGAN's and

4   VINCIGUERRA's breaches, 3PL has incurred attorneys fees in an amount to be

5   proven at or after trial.

6                          **Seventh Cause of Action**

7       **Breach of Implied Covenant of Good Faith and Fair Dealing**

8       **(Against WALTER L. MITCHELL, JONATHAN LANSAGAN, and**

9                      **CHRISTOPHER VINCIGUERRA)**

10      121.   3PL realleges and incorporates as though set forth fully herein the

11  allegations found in paragraphs 1 through 120 above.

12      122.   A covenant of good faith and fair dealing is implied by law in all

13  contracts. The covenant requires that neither party to a contract do anything to

14  deprive the other of the benefits of the contract.

15      123.   At the time that Cross-defendants MITCHELL, LANSAGAN, and

16  VINCIGUERRA entered into employment agreements with 3PL, those cross-

17  defendants implicitly agreed to act in good faith and deal fairly with 3PL.

18  MITCHELL, LANSAGAN, and VINCIGUERRA agreed with 3PL to act, abide

19  and perform the conditions and terms set forth in their employment agreements

20  with 3PL in good faith and in a fair manner.

21      124.   MITCHELL, LANSAGAN, and VINCIGUERRA breached their

22  implied covenant to act in good faith, and they acted in bad faith when they took

23  3PL's proprietary information in order to make a profit for themselves with a

24  competing firm Trinnos Technology LLC.

25      125.   MITCHELL breached his implied covenant to act in good faith

26  towards 3PL with MITCHELL diverted 3PL's company funds for his own personal

27  gain including using 3PL's company credit cards to purchase personal items for

28

1  himself, and diverting funds into his own personal accounts, without consent,

2  authorization, or notification to 3PL.

3      126.  MITCHELL, LANSAGAN, and VINCIGUERRA breached the duty

4  of good faith and fair dealing by promising 3PL without any intention of carrying

5  out their promises in order to unjustly enrich themselves to the financial detriment

6  of 3PL.

7      127.  Based on information and belief, MITCHELL, LANSAGAN, and

8  VINCIGUERRA further breached the duty of good faith and fair dealing by other

9  acts or omissions of which 3PL are presently unaware, and which will be shown

10  according to proof at time of trial.

11      128.  As a direct and proximate result of MITCHELL, LANSAGAN, and

12  VINCIGUERRA's breaches of this implied covenant, 3PL has been damaged in the

13  sum of not less than $1,000,000, plus interest at the legal rate per annum since

14  March 2010, as well as additional funds according to proof at time of trial, plus

15  attorney's fees.

### Eighth Cause of Action

#### Breach of Fiduciary Duty

#### (Against WALTER L. MITCHELL)

19      129.  3PL realleges and incorporates as though set forth fully herein the

20  allegations found in paragraphs 1 through 128 above.

21      130.  MITCHELL is currently a shareholder and partner of 3PL.

22  MITCHELL was an officer of 3PL from 3PL's inception in 2005 until 2011.

23  MITCHELL was a member of the Board of Directors of 3PL from 2005 until

24  sometime in 2011.

25      131.  MITCHELL acted on 3PL's behalf for purposes of developing and

26  managing the Software, as well as creating and drafting license agreements with

27  3PL's customers.

28

21

132.   During his employment with 3PL, MITCHELL misappropriated 3PL's trade secrets, confidential information, and customer lists, planned and executed his plan to steal 3PL's software and proprietary information in order to compete against 3PL, and solicit 3PL's customers and employees away from 3PL.  MITCHELL also wrongfully accessed 3PL's electronically stored information and private networks to remove, delete, damage, and took and used confidential and proprietary information from 3PL without authorization, for his own benefit, and with the intent to injure 3PL.

133.   While MITCHELL was an officer, board member, and shareholder of 3PL, MITCHELL, among other things, created a business that is adverse to the interests of 3PL, diverted corporate funds of 3PL, wrongfully accessed and damaged 3PL's computer networks and systems, conspired with other 3PL employees to injure 3PL, and is now suing 3PL.

134.   MITCHELL failed to act as a reasonably careful shareholder, officer, board member, and partner of 3PL would have acted under the same or similar circumstances.

135.   3PL was and continues to be harmed in an amount to be proven at trial because of MITCHELL's actions;

136.   MITCHELL's conduct was a substantial factor in causing 3PL's harm.

137.   MITCHELL's conduct was done with malice, oppression, and/or fraud, in that MITCHELL had a willful and knowing disregard of the rights of 3PL, and deliberately acted with the intent to cause harm to 3PL, in that exemplary damages may be properly awarded against MITCHELL.

///

///

///

22

### Ninth Cause of Action

### Aiding and Abetting Breach of Fiduciary Duty

### (Against JONATHAN LANSAGAN, and CHRISTOPHER VINCIGUERRA)

138.   3PL realleges and incorporates as though set forth fully herein the allegations found in paragraphs 1 through 137 above.

139.   MITCHELL is currently a shareholder and partner of 3PL.

140.   MITCHELL acted on 3PL's behalf for purposes of developing and managing the Software, as well as creating and drafting license agreements with 3PL's customers.

141.   During his employment with 3PL, MITCHELL misappropriated 3PL's trade secrets, confidential information, and customer lists, planned and executed his plan to steal 3PL's software and proprietary information in order to compete against 3PL, and solicit 3PL's customers and employees away from 3PL.

142.   While MITCHELL is a partner and shareholder of 3PL, MITCHELL created a business that is adverse to the interests of 3PL, diverted corporate funds of 3PL, wrongfully accessed and damaged 3PL's computer networks and systems, and is suing 3PL.

143.   MITCHELL failed to act as a reasonably careful shareholder and partner of 3PL would have acted under the same or similar circumstances.

144.   LANSAGAN and VINCIGUERRA had actual knowledge of MITCHELL's misappropriation of 3PL's trade secrets, as well as MITCHELL's plan and conspiracy to injure and compete against 3PL.

145.   LANSAGAN and VINCIGUERRA knowingly participated in aiding and abetting MITCHELL in the misappropriation of 3PL's trade secrets, and knowingly participated in MITCHELL's plan and conspiracy to injure and compete against 3PL.  LANSAGAN and VINCIGUERRA's actions included misappropriating 3PL's trade secrets themselves, deleting electronically stored

23

1 information on 3PL's computer networks and systems, and disrupting 3PL's

2 business activities.

3    146.   MITCHELL knowingly induced LANSAGAN and VINCIGUERRA

4 in participating in their activities, including but not limited to misappropriation of

5 3PL's trade secrets, deleting electronically stored information on 3PL's computer

6 networks and systems, and disrupting 3PL's business activities.

7    147.   3PL was and continues to be harmed in an amount to be proven at trial

8 because of Cross-Defendants' actions;

9    148.   Cross-Defendants' conduct was a substantial factor in causing 3PL's

10 harm.

11                        **Tenth Cause of Action**

12                   **Breach of the Duty of Loyalty**

13        **(Against WALTER L. MITCHELL, JONATHAN LANSAGAN, and**

14                   **CHRISTOPHER VINCIGUERRA)**

15    149.   3PL realleges and incorporates as though set forth fully herein the

16 allegations found in paragraphs 1 through 148 above.

17    150.   MITCHELL is currently a shareholder and partner of 3PL.

18    151.   MITCHELL acted on 3PL's behalf for purposes of developing and

19 managing the Software, as well as creating and drafting license agreements with

20 3PL's customers.

21    152.   During his employment with 3PL, MITCHELL knowingly

22 misappropriated 3PL's trade secrets, confidential information, and customer lists,

23 planned and executed his plan to steal 3PL's software and proprietary information

24 in order to compete against 3PL, and solicit 3PL's customers and employees away

25 from 3PL.

26    153.   While MITCHELL was a partner and shareholder of 3PL, MITCHELL

27 created a business that is adverse to the interests of 3PL, diverted corporate funds of

28

                                    24

1  3PL, wrongfully accessed and damaged 3PL's computer networks and systems, and

2  is suing 3PL.

3      154.  MITCHELL knowingly acted against the interests of 3PL during his

4  employment with 3PL, and acted against the interests of 3PL while he was a partner

5  and shareholder of 3PL.

6      155.  MITCHELL continues to act on against the interest of 3PL while

7  performing as an agent, officer, and employee of 3PL's competitor Trinnos, whose

8  interest are adverse to 3PL.

9      156.  3PL did not give informed consent to any of MITCHELL's wrongful

10  conduct, as alleged herein.

11      157.  3PL was and continues to be harmed in an amount to be proven at trial

12  because of MITCHELL's actions.

13      158.  MITCHELL's conduct was a substantial factor in causing 3PL's harm.

14      159.  Cross-Defendants' conduct was done with malice, oppression, and/or

15  fraud, in that Cross-Defendants acted with willful and knowing disregard of the

16  rights of 3PL, and deliberately acted with the intent to cause harm to 3PL, in that

17  exemplary damages may be properly awarded against Cross-Defendants.

18                      **Eleventh Cause of Action**

19                      **Negligent Misrepresentation**

20                  **(Against All Cross-Defendants)**

21      160.  3PL realleges and incorporates as though set forth fully herein the

22  allegations found in paragraphs 1 through 159 above.

23      161.  Cross-Defendants represented to third parties such as 3PL's current

24  and former customers and to 3PL that certain facts were true, including but not

25  limited to the fact that cross-defendants were the owners of the Software and other

26  proprietary information.

27      162.  MITCHELL made false representations to 3PL including stating that

28  he was developing and managing the Software for the benefit of 3PL, and that 3PL

25