1  and DTS would be the exclusive owners of the Software.

2  163. MITCHELL made false representations to the U.S. Copyright Office

3  including stating that MITCHELL was the exclusive author and owner of the

4  Software, and that MITCHELL was not categorized as "work-for-hire" as described

5  in his applications to the U.S. Copyright Office.

6  164. VINCIGUERRA made false representations to 3PL's current and

7  former customers including stating that TRINNOS was the owner of the Software

8  and was authorized to sell licenses with regard to the Software.

9  165. In March 2011, VINCIGUERRA made false representations to 3PL

10 including stating that he would not alter, delete or damage any of 3PL's emails and

11 electronically stored information.

12 166. LANSAGAN made false representations to 3PL's current and former

13 customers including stating that TRINNOS was the owner of the Software and was

14 authorized to sell licenses with regard to the Software.

15 167. In March 2011, LANSAGAN made false representations to 3PL,

16 including stating that he would not alter, delete or damage any of 3PL's emails and

17 electronically stored information.

18 168. Although Cross-Defendants may have honestly believed that the

19 representations were true, Cross-Defendants had no reasonable grounds for

20 believing the representations were true when they made it.

21 169. Cross-Defendants intended that third parties and 3PL rely on these

22 representations.

23 170. That third parties and 3PL were ignorant of the truth and did

24 reasonably rely on Cross-Defendants' representations.

25 171. 3PL was harmed, and 3PL's reliance on Cross-Defendants'

26 representations was a substantial factor in causing 3PL's harm.

27

28

1

## Twelfth Cause of Action

2

## Fraudulent Concealment

3

## (Against WALTER L. MITCHELL)

4     172.   3PL realleges and incorporates as though set forth fully herein the

5 allegations found in paragraphs 1 through 171 above.

6     173.   MITCHELL is a business partner and shareholder of 3PL.

7     174.   MITCHELL was held in a high level of trust and confidence in his

8 position at 3PL.

9     175.   MITCHELL intentionally failed to disclose certain material facts to

10 3PL, including but not limited to the fact that MITCHELL misappropriated 3PL's

11 confidential information, trade secrets, computer code, and customer lists from 3PL

12 without notification to 3PL or the consent of 3PL, in anticipation of competing

13 against 3PL, filing several applications for copyright protection for the Software in

14 his own name, diverting 3PL's corporate funds for his personal use, illegally

15 accessing 3PL's computer network and systems, and soliciting and contacting

16 3PL's customers for his own gain.

17     176.   MITCHELL actively concealed certain material facts including but not

18 limited to the fact that MITCHELL misappropriated 3PL's confidential

19 information, trade secrets, computer code, and customer lists from 3PL without

20 notification to 3PL or the consent of 3PL, in anticipation of competing against 3PL,

21 filing several applications for copyright protection for the Software, diverting 3PL's

22 corporate funds for his personal use, illegally accessing 3PL's computer network

23 and systems, and soliciting and contacting 3PL's customers for his own gain.

24 MITCHELL actively prevented 3PL from discovering those facts, even though he

25 had a duty to disclose those facts to 3PL.

26     177.   MITCHELL intended to deceive 3PL by concealing material facts.

27     178.   3PL did not know of the concealed facts, and did reasonably rely on

28 MITCHELL's deception.

1     179.   3PL was harmed and MITCHELL's concealment was a substantial

2 factor in causing 3PL's harm.

3     180.   MITCHELL's conduct was done with malice, oppression, and/or

4 fraud, in that MITCHELL acted with willful and knowing disregard of the rights of

5 3PL, and deliberately acted with the intent to cause harm to 3PL, in that exemplary

6 damages may be properly awarded against MITCHELL.

## Thirteenth Cause of Action

### Violation of Business & Professions Code §17200 *et seq.*

### (Against All Cross-Defendants)

10     181.   3PL realleges and incorporates as though set forth fully herein the

11 allegations found in paragraphs 1 through 180 above.

12     182.   Cross-Defendants' wrongful conduct as alleged herein constitutes

13 unfair and fraudulent business practices that can and have in fact deceived 3PL in

14 violation of California Business & Professions Code §17200 *et seq.* Cross-

15 Defendants' wrongful conduct includes but not limited to:

16         a.     False and misleading representations about the Software and

17               3PL;

18         b.     Misappropriation of trade secrets, confidential information,

19               customer lists, and computer code;

20         c.     Fraud and concealment;

21         d.     Misuse of 3PL company funds;

22         e.     Illegal access and destruction of 3PL's electronically stored

23               information;

24         f.     Conspiracy to damage 3PL, and other wrongful actions.

25     183.   Cross-Defendants' wrongful conduct is part of an ongoing pattern

26 and/or systematic course of conduct that continues to the present day.

27     184.   Cross-Defendants' wrongful conduct adversely impacts the public

28 interest.

185.   Cross-Defendants' wrongful conduct is a factual and legal cause of financial harm to 3PL. 3PL would not have continued employment of Cross-Defendants if 3PL knew of Cross-Defendant's conspiracy, and would never have hired Cross-Defendants if 3PL knew about Cross-Defendants' intention to carry out the wrongful conduct alleged herein.  3PL would never have given shares to MITCHELL, appointed him officer, allowed him to be a board member, and made him a partner of 3PL if 3PL knew about MITCHELL's intention to carry out the wrongful conduct alleged herein.

186.   3PL requests the court enter such orders as may be necessary to restore to 3PL all sums which Cross-Defendants wrongfully acquired by means of unfair and fraudulent conduct as provided in Business & Professions Code §17203, Civil Code §3345, and for other appropriate relief.

187.   Cross-Defendants' conduct was deliberate and undertaken with oppression, fraud and/or malice within the meaning of Civil Code §3294, justifying an award of exemplary damages.

### Fourteenth Cause of Action

### Violation of Business & Professions Code §17500 *et seq.*

### (Against All Cross-Defendants)

188.   3PL realleges and incorporates as though set forth fully herein the allegations found in paragraphs 1 through 187 above.

189.   Cross-Defendants made untrue and misleading statements to the public regarding the services of 3PL and the Software, including statements in publications and over the Internet, with the knowledge that such statements were untrue, in violation of California Business & Professions Code §17500.

190.   As a direct result of Cross-Defendants' conduct, Cross-Defendants have been and will be unjustly enriched at the expense of 3PL and the general public.

1   191.   3PL seeks an order awarding 3PL restitution of all monies wrongfully

2   acquired by Cross-Defendants by means of false statements, plus interest and

3   attorney's fees.

4   192.   Cross-Defendants' conduct was deliberation and was undertaken with

5   oppression, fraud and/or malice within the meaning of Civil Code §3294, justifying

6   an award of exemplary damages.

7   **Fifteenth Cause of Action**

8   **Copyright Infringement**

9   **(Against All Cross-Defendants)**

10   193.   3PL realleges and incorporates as though set forth fully herein the

11   allegations found in paragraphs 1 through 192 above.

12   194.   3PL is, and all relevant times has been, the sole entity authorized to

13   control and administer the copyright protected Software.

14   195.   Cross-Defendants have never sought and 3PL has never granted Cross-

15   Defendants any license to use, make or market unauthorized and unlicensed copies

16   of the Software. 3PL has never agreed that Cross-Defendants could reproduce, sell,

17   license, or use its Copyright-protected Software and represent the Software as their

18   own.

19   196.   Cross-Defendants have infringed and are continuing to infringe 3PL's

20   exclusive rights embodied in 3PL's Software by advertising, distributing,

21   reproducing, selling, licensing, and using the Software.

22   197.   Cross-Defendants' unauthorized acts constitute presently, and will

23   continue to constitute willful infringement of 3PL's exclusive rights to the

24   Software. Cross-Defendants have unlawfully derived and will continue to derive

25   income and profits from their infringing acts and 3PL has sustained and will

26   continue to sustain substantial injury, loss and damage therefrom.

27   198.   As a direct and proximate result of Cross-Defendants' acts of

28   infringement of 3PL's Software, 3PL is entitled to damages and Cross-Defendants'

1  profits pursuant to 17 U.S.C. § 504(b), or alternatively, to the maximum statutory

2  damages in the amount of $150,000 with respect to each infringed copyright

3  pursuant to 17 U.S.C. § 504(c).

4       199.    3PL is additionally entitled to its attorneys' fees pursuant to 17 U.S.C.

5  § 505.

**Sixteenth Cause of Action**

**Contributory Infringement**

**(Against All Cross-Defendants)**

9       200.    3PL realleges and incorporates as though set forth fully herein the

10  allegations found in paragraphs 1 through 199 above.

11       201.    Defendants have knowingly and intentionally induced, caused and/or

12  materially contributed to the infringement of 3PL's Software by advertising,

13  distributing, reproducing, licensing, selling, and claiming ownership of the

14  Software.

15       202.    By reason of their contributory infringement, Cross-Defendants have

16  unlawfully derived and will continue to derive, income and profits from their

17  infringing acts, and 3PL has sustained and will continue to sustain substantial

18  injury, loss and damage therefrom.

19       203.    As a direct and proximate result of Cross-Defendants' acts of

20  infringement of 3PL's Software, 3PL is entitled to damages and Cross-Defendants'

21  profits pursuant to 17 U.S.C. § 504(b), or alternatively, to the maximum statutory

22  damages in the amount of $150,000 with respect to each infringed copyright

23  pursuant to 17 U.S.C. § 504(c).

24       204.    3PL is additionally entitled to its attorneys' fees pursuant to 17 U.S.C.

25  § 505.

## Seventeenth Cause of Action

### Conversion

### (Against WALTER L. MITCHELL AND JONATHAN LANSANGAN)

205.    3PL realleges and incorporates as though set forth fully herein the allegations found in paragraphs 1 through 204 above.

206.    3PL is the owner with right of possession of its corporate funds, credit cards, and money stored in its bank accounts.

207.    From 2009 to 2011, MITCHELL intentionally, fraudulently, maliciously received and took control of 3PL's corporate funds by falsifying reimbursement requests and utilizing 3PL corporate credit cards for his personal expenses which were not authorized by 3PL.

208.    From 2009 to 2011, LANSANGAN intentionally, fraudulently, maliciously received and took control of 3PL's corporate funds by falsifying reimbursement requests and utilizing 3PL corporate credit cards for his personal expenses which were not authorized by 3PL.

209.    To the present date, MITCHELL has not turned over corporate funds and money to 3PL when 3PL demanded MITCHELL to account for sums received from 3PL, and return to 3PL its corporate funds and money improperly received by MITCHELL, in the amount of $92,091.00.

210.    To the present date, LANSANGAN has not turned over corporate funds and money to 3PL when 3PL demanded LANSANGAN to account for sums received from 3PL, and return to 3PL its corporate funds and money improperly received by LANSANGAN in the amount of $16,977.00.

211.    As a direct and proximate result of MITCHELL's actions, 3PL was harmed in an amount to be proven at trial.

212.    As a direct and proximate result of LANSANGAN's actions, 3PL was harmed in an amount to be proven at trial.

213.    3PL is entitled to exemplary damages for the actions of MITCHELL and LANSANGAN.

### Eighteenth Cause of Action

### Tortious Interference with Contract

### (Against All Cross-Defendants)

214.    3PL realleges and incorporates as though set forth fully herein the allegations found in paragraphs 1 through 213 above.

215.    3PL has contracts with its clients, and had contracts with its former clients, who license 3PL's software for commercial use.

216.    Cross-Defendants knew of 3PL's contracts with third parties.

217.    Cross-Defendants intended to cause third parties to breach their contracts with 3PL, by calling 3PL clients on the phone and making representations in order to induce 3PL clients to breach their contracts with 3PL and enter into new contracts with Trinnos.

218.    As a direct and proximate result of Mitchell's actions, 3PL was harmed in an amount to be proven at trial.

### PRAYER FOR RELIEF

Wherefore, 3PL prays for judgment as follows:

AS TO THE FIRST CAUSE OF ACTION:

1.    For general and compensatory damages;

2.    For a preliminary and permanent injunction against all Cross-Defendants, enjoining all Cross-Defendants from the following actions:

   a.    Possessing, copying, or making unauthorized use of Plaintiff's customer lists, trade secrets, computer codes, and confidential information that are the proprietary property of Plaintiff.

      b.     Advertising, marketing, and selling the Software, as described herein.

      c.     Contacting and/or soliciting customers whose identifying information is contained in Plaintiff's customer lists, trade secrets, computer codes, and confidential information.

      d.     Disposing of or destroying any documents that are relevant to the Complaint in this action, including but not limited to customer lists, trade secrets, computer codes, and confidential information, which includes metadata, and any electronically stored information.

      e.     Disposing of or destroying any documents or related materials that evidence, relate, or pertain to Defendant's misappropriation of Plaintiff's customer lists, trade secrets, computer codes, and confidential information, as well as any electronically stored information, and information obtained from third parties regarding Plaintiff's customer lists, trade secrets, computer codes, and confidential information.

      f.     Accessing or attempting to access 3PL's computer networks and systems, including any and all email systems and telephone systems.

3.     For a constructive trust over the profits wrongfully received by Cross-Defendants;

4.     For an order for Cross-Defendants to pay 3PL reasonable royalties;

5.     For exemplary damages; and

6.     For reasonable attorney's fees.

AS TO THE SECOND CAUSE OF ACTION:

1.     For an order precluding MITCHELL from enforcing his copyright applications with regards to the Software;

34

1    2.    A declaration that MITCHELL's copyright applications are invalid;

2         and

3    3.    A declaration that MITCHELL has no right or claim to the Software.

4    4.    For an order directing MITCHELL to cancel his copyright applications

5         previously submitted to the US Copyright Office.

6 **AS TO THE THIRD CAUSE OF ACTION:**

7    1.    For general and compensatory damages.

8 **AS TO THE FOURTH CAUSE OF ACTION:**

9    1.    For general and compensatory damages; and

10    2.    For a preliminary and permanent injunction against all Cross-

11         Defendants as outlined herein.

12 **AS TO THE FIFTH CAUSE OF ACTION:**

13    1.    For general and compensatory damages; and

14    2.    For a preliminary and permanent injunction against all Cross-

15         Defendants outlined herein.

16    3.    A declaration that MITCHELL's copyright applications are invalid;

17    4.    A declaration that MITCHELL has no right or claim to the Software;

18         and

19    5.    For exemplary damages.

20 **AS TO THE SIXTH CAUSE OF ACTION:**

21    1.    For general and compensatory damages not less than $1,000,000; and

22    2.    For attorney's fees.

23 **AS TO THE SEVENTH CAUSE OF ACTION:**

24    1.    For general and compensatory damages.

25 **AS TO THE EIGHTH CAUSE OF ACTION:**

26    1.    For general and compensatory damages; and

27    2.    For exemplary damages.

28

AS TO THE NINTH CAUSE OF ACTION:

    1.    For general and compensatory damages.

AS TO THE TENTH CAUSE OF ACTION:

    1.    For general and compensatory damages; and

    2.    For exemplary damages.

AS TO THE ELEVENTH CAUSE OF ACTION:

    1.    For general and compensatory damages.

AS TO THE TWELFTH CAUSE OF ACTION:

    1.    For general and compensatory damages;

    2.    For exemplary damages; and

    3.    For attorney's fees.

AS TO THE THIRTEENTH CAUSE OF ACTION:

    1.    For general and compensatory damages;

    2.    For civil penalties allowed by statute;

    3.    For exemplary damages; and

    4.    For attorney's fees.

AS TO THE FOURTEENTH CAUSE OF ACTION:

    1.    For general and compensatory damages;

    2.    For restitution of all monies wrongfully acquired, plus interest;

    3.    For civil penalties allowed by statute;

    4.    For exemplary damages; and

    5.    For attorney's fees.

AS TO THE FIFTEENTH CAUSE OF ACTION:

    1.    Award 3PL, at its election, either (i) actual damages and the profits derived by Cross-Defendants as a result of Cross-Defendants' infringement of 3PL's copyright protected works and Software or (ii) statutory damages in the maximum amount permitted under applicable law;

36

1    2.    For attorney's fees.

2  AS TO THE SIXTEENTH CAUSE OF ACTION:

3    1.    Award 3PL, at its election, either (i) actual damages and the profits

4          derived by Cross-Defendants as a result of Cross-Defendants'

5          infringement of 3PL's copyright protected works and Software or (ii)

6          statutory damages in the maximum amount permitted under applicable

7          law;

8    2.    For attorney's fees.

9  AS TO THE SEVENTEENTH CAUSE OF ACTION:

10   1.    For general and compensatory damages; and

11   2.    For exemplary damages.

12 AS TO THE EIGHTEENTH CAUSE OF ACTION:

13   1.    For general and compensatory damages; and

14   2.    For exemplary damages.

15 AS TO ALL CAUSES OF ACTION:

16   1.    For all costs of suit herein incurred;

17   2.    For attorney's fees as permitted by contract and/or statute; and

18   3.    For such other and further relief as the court may deem proper.

19

20 DATED:  September 29, 2011        BROWN, WEGNER & BERLINER LLP

21

22                                  By: _____

23                                     Matthew A. Berliner
                                       Attorneys for Defendant
24                                     3PL Systems, Inc.

25

26

27

28

                                    37

## **JURY DEMAND**

3PL demands a trial by jury.


DATED:  September **29**, 2011          BROWN, WEGNER & BERLINER LLP


By:   _____
                    Matthew A. Berliner
                    Attorneys for Defendant
                    3PL Systems, Inc.

38

# EXHIBIT A

# LETTER OF UNDERSTANDING

### Software Development Proposal

This proposal is for the continued development and future intentions of the transportation brokerage office management software (referred to as TMS)

At the time that the TMS is marketed and sold a new enterprise will be formed with the following ownership:

Marc Meakin and Robby Thorne — 70%
        (24% for time and effort, 44% for current and future capital investment, 2% for existing freightsaver.com ownership)
Walter Mitchell — 25%
        (24½% for time and effort, ½% for existing freightsaver.com ownership)
Bill Suwara (from freightsaver.com) — 2%
Buster Schwab (from freightsaver.com) — 2%
Ryan Reina (from freightsaver.com) — 1%
Roland Senga (from freightsaver.com) — 0%

Additionally, Walter Mitchell will be granted a contract for the continued development of the software. The contract will be for 6 months at $3,800.00 per month. The contract will start on November 1st 2003 and terminate on April 30th 2004. After the end of 6 months this contract can be renegotiated with the following considerations.

- If a new enterprise is formed then an agreed upon salary will be provided to Walter Mitchell for the continued development, project management, and implementation of the software. The terms of the salary will be determined at the time that formation of the new enterprise and will include a provision based on the success of the software.
- If continued development is requested and an enterprise is not formed both parties (Walter Mitchell and Marc Meakin) will agree to terms to extend the contract. This will include consideration for other installations of the software to help subsidize the cost of the contract.
- Walter Mitchell will have exclusive rights to develop and manage the development of the TMS software.

If the proposal outlined above is acceptable please indicate acceptance below.

_____     10/21/03
Walter Mitchell                                         Date

_____     10/21/03
Marc Meakin                                            Date

EXHIBIT A

**EXHIBIT B**



2681 Dow Ave. Suite B1
Tustin, CA 92780
www.3plsystems.com
714-855-3370

## LICENSE AGREEMENT

**NOTICE TO USER: THIS IS A CONTRACT. BY INSTALLING AND/OR USING THIS SOFTWARE YOU ACCEPT ALL THE TERMS AND CONDITIONS OF THIS AGREEMENT.**

This 3PL Systems, Inc. ("3PLSYS") End User License Agreement ("EULA") accompanies all 3PL Systems products, services, web sites, web applications and related explanatory materials ("SOFTWARE"). The term "SOFTWARE" shall also include any upgrades, modified versions or updates of the Software licensed to you by 3PLSYS. Please read this EULA carefully. If you are reading this prior to electronic distribution, you will be asked to accept this agreement and continue to install or, if you wish to decline this agreement, in which case you will not be able to use the Software. The SOFTWARE is protected by copyright laws and international copyright treaties, as well as other intellectual property laws and treaties. The SOFTWARE is licensed, not sold.

### 1. DEFINITIONS

I. USER – A single person, entity or system accessing the SOFTWARE. USER licensing is based on concurrent users.

### 2. GRANT OF LICENSE: Upon issuance of a valid SERIAL NUMBER by 3PLSYS to you and a current service agreement, this EULA grants you the following rights:

a. SOFTWARE PRODUCT: 3PLSYS grants to you as an individual, a non-transferable, non-exclusive license to use the SOFTWARE PRODUCT for use as an individual or entity. All USERS that use this product must be licensed.
b. If you are an entity, 3PLSYS grants you the same rights as above.
c. YOU MAY NOT DISTRIBUTE ANY PORTION OF THE SOFTWARE.
d. ELECTRONIC DOCUMENTS: Solely with respect to electronic documents included with the SOFTWARE, you may make an unlimited number of copies (either in hardcopy or electronic form), provided that such copies shall be used only for internal purposes and are not republished or distributed to any third party.
e. You must take all necessary precautions to guard, maintain and guarantee the confidentiality of the SOFTWARE and trade secrets it contains (including all data, text and formulae). Disclosure to any party is strictly forbidden.
f. The CUSTOMER INTERNET MODULE allows you the right to provide access to your customers using your valid LICENSE. The limit of these customers is specified in the service contract.
g. The number of USERS is limited to those purchased and maintaining in the service contract.
h. 3PLSYS reserves all rights not expressly granted.

### 3. PROVISIONS OF THE SERVICE

a. 3PLSYS has subsidiaries and affiliated legal entities around the world ("Subsidiaries and Affiliates"). Sometimes, these companies will be providing the SOFTWARE to you on behalf of 3PLSYS itself. You acknowledge and agree

40
EXHIBIT B



2681 Dow Ave. Suite B1
Tustin, CA 92780
www.3plsystems.com
714-855-3370

that Subsidiaries and Affiliates will be entitled to provide the SOFTWARE to you.

b. 3PLSYS is constantly innovating in order to provide the best possible experience for its users. You acknowledge and agree that the form and nature of the SOFTWARE which 3PLSYS provides may change from time to time without prior notice to you.

c. As part of this continuing innovation, you acknowledge and agree that 3PLSYS may stop (permanently or temporarily) providing any features within the SOFTWARE to you or to users generally at 3PLSYS's sole discretion, without prior notice to you. You may stop using the SOFTWARE at any time.

d. You acknowledge and agree that if 3PLSYS disables access to your account, you may be prevented from accessing the SOFTWARE, your account details or any files or other content which is contained in your account.

e. You agree not to access (or attempt to access) any of the SOFTWARE by any means other than through the interface that is provided by 3PLSYS, unless you have been specifically allowed to do so in a separate agreement with 3PLSYS. You specifically agree not to access (or attempt to access) any of the SOFTWARE through any automated means (including use of scripts or web crawlers) and shall ensure that you comply with the instructions set out in any robots.txt file present on the SOFTWARE.

f. You agree that you will not engage in any activity that interferes with or disrupts the SOFTWARE (or the servers and networks which are connected to the SOFTWARE).

g. You agree that you are solely responsible for (and that 3PLSYS has no responsibility to you or to any third party for) any breach of your obligations under the Terms and for the consequences (including any loss or damage which 3PLSYS may suffer) of any such breach.

h. You agree and understand that you are responsible for maintaining the confidentiality of passwords associated with any account you use to access the SOFTWARE.

i. You understand that all information (such as data files, written text, computer software, music, audio files or other sounds, photographs, videos or other images) which you may have access to as part of, or through your use of, the SOFTWARE are the sole responsibility of the person from which such content originated.

j. You acknowledge and agree that 3PLSYS (or 3PLSYS's licensors) own all legal right, title and interest in and to the SOFTWARE, including any intellectual property rights which subsist in the SOFTWARE (whether those rights happen to be registered or not, and wherever in the world those rights may exist). You further acknowledge that the SOFTWARE may contain information which is designated confidential by 3PLSYS and that you shall not disclose such information without 3PLSYS's prior written consent.

**4. COPYRIGHT.** The SOFTWARE is owned by 3PLSYS and its suppliers, and its structure, organization and code are the valuable trade secrets of 3PLSYS and its suppliers. The SOFTWARE is protected by United States Copyright Law and International Treaty provisions. You may use trademarks only



2681 Dow Ave. Suite B1
Tustin, CA 92780
www.3plsystems.com
714-855-3370

insofar as required to comply with Section 1 of this EULA and to identify printed output produced by the Software, in accordance with accepted trademark practice, including identification of trademark owner's name. Such use of any trademark does not give you any rights of ownership in that trademark. Except as stated above, this EULA does not grant you any intellectual property rights in the Software.

**5. RESTRICTIONS.** You may not resell, transfer, rent or lease the SOFTWARE. You agree not to modify, adapt, translate, reverse engineer, decompile, disassemble or otherwise attempt to discover the source code of the Software. You may not alter or modify in any way the installer for the Software, or create a new installer for the Software. Redistribution rights, if any, are outlined below. No portion of SOFTWARE PRODUCTS may be redistributed.

**6. UPGRADES.** The SOFTWARE may automatically be updated from time to time. These updates are designed to improve, enhance and further develop the SOFTWARE and may take the form of bug fixes, enhanced functions, new software modules and completely new versions. You agree to receive such updates (and permit 3PLSYS to deliver these to you) as part of your use of the Services.

If the SOFTWARE is labeled as an upgrade, you must be properly licensed to use a product identified by 3PLSYS as being eligible for the upgrade in order to use the SOFTWARE. SOFTWARE labeled as an upgrade replaces and/or supplements the product that formed the basis for your eligibility for the upgrade. You may use the resulting upgraded product only in accordance with the terms of this EULA. If the SOFTWARE is an upgrade of a component of a package of software programs that you licensed as a single product, the SOFTWARE may be used and transferred only as part of that single product package and may not be separated for use on more than one computer.

**7. EXPORT RESTRICTIONS.** You agree that neither you nor your customers intend to or will, directly or indirectly, export or transmit (a) the SOFTWARE or related documentation and technical data or (b) your software products as defined under of this EULA (or any part thereof), or any process or service that is the direct product of the SOFTWARE to any country to which such export or transmission is restricted by any applicable U.S. regulation or statute, without the prior written consent, if required, of the Bureau of Export Administration of the U.S. Department of Commerce, or such other governmental entity as may have jurisdiction over such export or transmission.

**8. NO WARRANTY.** The SOFTWARE is being delivered to you AS IS and 3PLSYS makes no warranty as to its use or performance. 3PLSYS AND ITS SUPPLIERS DO NOT AND CANNOT WARRANT THE PERFORMANCE OR RESULTS YOU MAY OBTAIN BY USING THE SOFTWARE OR DOCUMENTATION.

**42**
**EXHIBIT B**



2681 Dow Ave. Suite B1
Tustin, CA 92780
www.3plsystems.com
714-855-3370

3PLSYS AND ITS SUPPLIERS MAKE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO NONINFRINGEMENT OF THIRD PARTY RIGHTS, MERCHANTABILITY, OR FITNESS FOR ANY PARTICULAR PURPOSE. IN NO EVENT WILL 3PLSYS OR ITS SUPPLIERS BE LIABLE TO YOU FOR ANY CONSEQUENTIAL, INCIDENTAL OR SPECIAL DAMAGES, INCLUDING ANY LOST PROFITS OR LOST SAVINGS, EVEN IF A 3PLSYS REPRESENTATIVE HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, OR FOR ANY CLAIM BY ANY THIRD PARTY. Some states or jurisdictions do not allow the exclusion or limitation of incidental, consequential or special damages, or the exclusion of implied warranties or limitations on how long an implied warranty may last, so the above limitations may not apply to you.

**9. GOVERNING LAW AND GENERAL PROVISIONS.** This EULA will be governed by the laws of the State of California, U.S.A., excluding the application of its conflicts of law rules. This EULA will not be governed by the United Nations Convention on Contracts for the International Sale of Goods, the application of which is expressly excluded. If any part of this EULA is found void and unenforceable, it will not affect the validity of the balance of the EULA, which shall remain valid and enforceable according to its terms. You agree that the Software will not be shipped, transferred or exported into any country or used in any manner prohibited by the United States Export Administration Act or any other export laws, restrictions or regulations. This EULA shall automatically terminate upon failure by you to comply with its terms. This Agreement may only be modified in writing signed by an authorized officer of 3PLSYS.

**10. NOTICE TO GOVERNMENT END USERS.** If this product is acquired under the terms of a: GSA contract- Use, reproduction or disclosure is subject to the restrictions set forth in the applicable ADP Schedule contract; U.S. DoD contract- Use, duplication or disclosure by the Government is subject to restrictions as set forth in subparagraph (c) (1) (ii) of 252.227-7013; Civilian agency contract- Use, reproduction, or disclosure is subject to 52.227-19 (a) through (d) and restrictions set forth in this EULA.

**11. TECHNOLOGY ESCROW.** The software (source code and database) will be held by a third party technology escrow. The escrow service will require additional fees paid by the licensee. These fees will include housing the deposited material and updates. Verification services are not included. Release conditions for the software are included in the Beneficiary Contract signed with the Technology Escrow Company.

Unpublished-rights reserved under the copyright laws of the United States.
3PL Systems, Inc., a California Corporation, 19829 Hamilton Ave, Torrance, California 90502.
Effective 9/18/2008

# EXHIBIT C

# 3PL SYSTEMS INC.
# CONFIDENTIALITY AGREEMENT

I, _Jonathan Lansangan_____, understand that in the course of my
employment with this Company (3PL Systems Inc.) I may have access to and
become acquainted with information of a confidential, proprietary or secret nature
which is or may be either applicable or related to the present or future business
of the Company, its research and development, or the business of its customers.
Such trade secret information includes, but is not limited to, devices, inventions,
processes, and compilations of information, records, specifications and
information concerning customers and/or vendors.

I agree that I will not disclose any of the above mentioned trade secrets, directly
or indirectly, or use them in any way, either during the term of my employment or
at any time thereafter, except as required in the course of my employment with
the company or upon express written permission from the company.

I further understand that I am an at-will employee of this company and that this
agreement is not to be construed as constituting a promise off continued
employment.

_____                    _4/11/07_____
Signature of Employee                              Date

44
EXHIBIT C

# 3PL Systems
## Confidential Information and
## No Solicitation Agreement
### Employer Copy

I, _Jonathan    Lunsang,_ as a condition of my employment with 3PL Systems, agree that:
All documents and information regarding the Company's business and the names, addresses
and specialized requirements of the Company's clients are highly confidential and constitute
proprietary information. Proprietary information also includes any and all information of a
confidential, proprietary or secret nature that is or may be either applicable to or related in any
way to (i) the business, present or future, of the Company; (ii) the research and development
or inventions of the Company; (iii) the customer lists of the Company; or (iv) the computer
techniques and processing abilities of the Company. For example, proprietary information
includes, but is not limited to, trade secrets; procedures; data; computer programs; systems
design; manuals; know-how; techniques; customer lists; marketing data, plans and strategies;
business plans; and all computer information designed by or developed for the Company.

During employment with the Company or at any time thereafter, I may not use or disclose such
proprietary Information to any person, firm, company or corporation for the personal benefit of
myself or for the benefit of any person, firm, company, or corporation other than the Company.
Use of such information is restricted to that use necessary to the performance of my duties and
any disclosure of such information outside the Company shall be made only with the consent
of the Company. Unauthorized use or disclosure of this confidential information shall result in
immediate discharge.

For a period of twenty-four (24) months after the termination of my employment, whether
voluntary or involuntary, I shall not use Company confidential and proprietary information or
trade secrets to solicit the customers or clients of the Company with respect to products or
services that are then competitive with one or more products or services of the Company, and I
shall not induce or attempt to induce any employees of the Company to leave its employ by
soliciting such employees to engage in any competing business or to aid or assist any person
or company that is or intends to be in competition with the Company.

I acknowledge that (i) in the event my employment with the Company terminates for any
reason, I will be able to earn a livelihood without violating the foregoing restrictions, and (ii) my
ability to earn a livelihood without violating these restrictions is a material condition to my
employment with the Company.

I acknowledge that my compliance with Sections 1-3 of this agreement is necessary to protect
the business and goodwill of the Company and that a breach of those sections will irreparably
and continually damage the Company, for which monetary damages may not be adequate.
Consequently, I agree that, in the event that I breach or threaten to breach any of these
covenants, the Company shall be entitled to both: (i) a preliminary or permanent injunction in
order to prevent the continuation of such harm, and (ii) monetary damages insofar as they can
be determined, including, but not limited to, the amount of fees, compensation or other
remuneration earned by me as a result of any breach. Nothing in this agreement, however,

shall be construed to prohibit the Company from also pursuing any other remedy, the parties having agreed that all remedies shall be cumulative.

If any provision, paragraph or subparagraph of this agreement is adjudged by any court to be void or unenforceable in whole or in part, such adjudication shall not affect the validity of the remainder of this agreement, including any other provision, paragraph, or subparagraph. Each provision, paragraph and subparagraph of this agreement is separable from every other provision, paragraph and subparagraph, and constitutes a separate and distinct covenant.

This agreement shall inure to the benefit of the Company and its successors, assigns, parent or subsidiary companies.

This agreement constitutes the complete understanding between me and the Company regarding the matters addressed, all prior representations or agreements regarding confidential information and unfair competition having been merged into this agreement. No alteration or modification to any of the provisions of this agreement shall be valid unless made in writing and signed by me and the Company.

In any dispute between me and the Company, the prevailing party shall recover its attorneys' fees.

This agreement shall be subject to and governed by the laws of the State of California.

Date: 9/25/07                          Date: 10/10/07

(Employee's Signature)                 (Company Representative)

Jonathan Lansangan                     Gay DeRusha
(Print Name)                           (Print Name)


DETACH AND GIVE THIS TO THE STAFF ADMINISTRATOR AFTER YOU HAVE SIGNED AND DATED IT.

46
EXHIBIT C

# EXHIBIT D

*3PL*

# DIVERSIFIED TRANSPORTATION SERVICES
## CONFIDENTIALITY AGREEMENT

I, *Christopher Vivaiguirro*, understand that in the course of my employment with this Company I may have access to and become acquainted with information of a confidential, proprietary or secret nature which is or may be either applicable or related to the present or future business of the Company, its research and development, or the business of its customers. Such trade secret information includes, but is not limited to, devices, inventions, processes, and compilations of information, records, specifications and information concerning customers and/or vendors.

I agree that I will not disclose any of the above mentioned trade secrets, directly or indirectly, or use them in any way, either during the term of my employment or at any time thereafter, except as required in the course of my employment with the company or upon express written permission from the company.

I further understand that I am an at-will employee of this company and that this agreement is not to be construed as constituting a promise off continued employment.

_____          9/16/07
Signature of Employee                     Date

47
EXHIBIT D

# 3PL Systems
## Confidential Information and
## No Solicitation Agreement
### Employer Copy

I, _Chris Vincinverra_, as a condition of my employment with 3PL Systems, agree that: All documents and information regarding the Company's business and the names, addresses and specialized requirements of the Company's clients are highly confidential and constitute proprietary information. Proprietary information also includes any and all information of a confidential, proprietary or secret nature that is or may be either applicable to or related in any way to (i) the business, present or future, of the Company; (ii) the research and development or inventions of the Company; (iii) the customer lists of the Company; or (iv) the computer techniques and processing abilities of the Company. For example, proprietary information includes, but is not limited to, trade secrets; procedures; data; computer programs; systems design; manuals; know-how; techniques; customer lists; marketing data, plans and strategies; business plans; and all computer information designed by or developed for the Company.

During employment with the Company or at any time thereafter, I may not use or disclose such proprietary information to any person, firm, company or corporation for the personal benefit of myself or for the benefit of any person, firm, company, or corporation other than the Company. Use of such information is restricted to that use necessary to the performance of my duties and any disclosure of such information outside the Company shall be made only with the consent of the Company. Unauthorized use or disclosure of this confidential information shall result in immediate discharge.

For a period of twenty-four (24) months after the termination of my employment, whether voluntary or involuntary, I shall not use Company confidential and proprietary information or trade secrets to solicit the customers or clients of the Company with respect to products or services that are then competitive with one or more products or services of the Company, and I shall not induce or attempt to induce any employees of the Company to leave its employ by soliciting such employees to engage in any competing business or to aid or assist any person or company that is or intends to be in competition with the Company.

I acknowledge that (i) in the event my employment with the Company terminates for any reason, I will be able to earn a livelihood without violating the foregoing restrictions, and (ii) my ability to earn a livelihood without violating these restrictions is a material condition to my employment with the Company.

I acknowledge that my compliance with Sections 1-3 of this agreement is necessary to protect the business and goodwill of the Company and that a breach of those sections will irreparably and continually damage the Company, for which monetary damages may not be adequate. Consequently, I agree that, in the event that I breach or threaten to breach any of these covenants, the Company shall be entitled to both: (i) a preliminary or permanent injunction in order to prevent the continuation of such harm, and (ii) monetary damages insofar as they can be determined, including, but not limited to, the amount of fees, compensation or other remuneration earned by me as a result of any breach. Nothing in this agreement, however,

48
EXHIBIT D

shall be construed to prohibit the Company from also pursuing any other remedy, the parties having agreed that all remedies shall be cumulative.

If any provision, paragraph or subparagraph of this agreement is adjudged by any court to be void or unenforceable in whole or in part, such adjudication shall not affect the validity of the remainder of this agreement, including any other provision, paragraph, or subparagraph. Each provision, paragraph and subparagraph of this agreement is separable from every other provision, paragraph and subparagraph, and constitutes a separate and distinct covenant.

This agreement shall inure to the benefit of the Company and its successors, assigns, parent or subsidiary companies.

This agreement constitutes the complete understanding between me and the Company regarding the matters addressed, all prior representations or agreements regarding confidential information and unfair competition having been merged into this agreement. No alteration or modification to any of the provisions of this agreement shall be valid unless made in writing and signed by me and the Company.

In any dispute between me and the Company, the prevailing party shall recover its attorneys' fees.

This agreement shall be subject to and governed by the laws of the State of California.

Date: 9/24/07

_____
(Employee's Signature)

Chris Vinciguerra
(Print Name)

Date: 9/24/07

_____
(Company Representative)

Gay DeRusha
(Print Name)

DETACH AND GIVE THIS TO THE STAFF ADMINISTRATOR AFTER YOU HAVE SIGNED AND DATED IT.

49
EXHIBIT D

# CERTIFICATE OF SERVICE

STATE OF CALIFORNIA, COUNTY OF ORANGE

I am employed in Orange County, State of California. I am over the age of 18 years and not a party to the within-entitled action. My business address is 2603 Main Street, Suite 1050, Irvine, California 92614.

On September 29, 2011, I served the foregoing document(s) described as:

**3PL SYSTEMS, INC.'S SECOND AMENDED CROSS-COMPLAINT FOR:**

1. **VIOLATION OF THE UNIFORM TRADE SECRETS ACT**
2. **DECLARATORY JUDGMENT**
3. **VIOLATION OF THE STORED WIRE AND ELECTRONIC COMMUNICATIONS AND TRANSACTIONAL RECORDS ACCESS ACT**
4. **VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT**
5. **VIOLATION OF THE LANHAM ACT**
6. **BREACH OF CONTRACT**
7. **BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**
8. **BREACH OF FIDUCIARY DUTY**
9. **AIDING AND ABETTING BREACH OF FIDUCIARY DUTY**
10. **BREACH OF DUTY OF LOYALTY**
11. **NEGLIGENT MISREPRESENTATION**
12. **CONCEALMENT**
13. **VIOLATION OF B&P § 17200**
14. **VIOLATION OF B&P §17500**
15. **COPYRIGHT INFRINGEMENT**
16. **CONTRIBUTORY INFRINGEMENT**
17. **CONVERSION**
18. **TORTIOUS INTERFERENCE WITH CONTRACT**

**DEMAND FOR JURY TRIAL**

on the following interested parties in this action as follows:

Ben T. Lila
  blila@mandourlaw.com
Gordon E. Gray III
  ggray@mandourlaw.com
Joseph Abraham Mandour, III
  jmandour@mandourlaw.com
MANDOUR & ASSOCIATES
16870 West Bernardo Drive, Suite 400
San Diego, CA 92127
Tel: 858-487-9300
Fax: 858-487-9390

Attorneys for Plaintiff/Cross-Defendant Walter L. Mitchell III and Cross-Defendants Jonathan Lansangan, Christopher Vinciguerra, and Trinnos Technology LLC

☒    **BY E-MAIL:** Based on a court order or an agreement of the parties to accept electronic service (by e-mail), I electronically served the document(s) on the interested parties' electronic service address(es) listed above.

I declare that I am employed in the office of a member of the Bar of this court at whose direction the service was made.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed this September 29, 2011, at Irvine, California.

Mae Galvez, PLS

**CERTIFICATE OF SERVICE**